JOHN BROOKS, Appellant, *v.* SAMUEL B. DICK et al.,
Impleaded, etc., Respondents.

Where a committee of railroad mortgage bondholders appointed on fore-
closure sale of the mortgaged property, for the purpose of effecting a
reorganization, enter into a contract within the scope of the authority
given to them, an action to have the contract adjudged null and void is
not sustainable, in the absence of any claim of fraud on the part of
those contracting with the committee or participation on their part in
some fraud of the committee; it is not sufficient to aver conduct on the
part of the latter which might as between them and the bondholders
amount to a violation of their trust duties.

(Argued October 17, 1892; decided October 25, 1892.)

APPEAL from judgment of the General Term of the
Supreme Court in the first judicial department entered upon
an order made November 13, 1891, which affirmed a judg-
ment in favor of defendants, entered upon an order sustaining
a demurrer to the complaint interposed by defendants Samuel
B. Dick and Arthur C. Huidekoper.

This action was brought by plaintiff as a bondholder of the
Shenango and Alleghany Railroad Company, a Pennsylvania
corporation. The complaint alleged the following facts
among others: The railroad of said company was sold under
decree in foreclosure, and purchased by a bondholders' commit-
tee. The committee was authorized to take all proper action
for a reorganization and consolidation with other companies of
the property as they might see fit, and for the payment of out-
standing obligations up to the time of such reorganization. Act-
ing under this authority the committee entered into a contract
with said defendants Dick and Huidekoper, by which it agreed
to issue to them certain bonds and stock of a successor company,
to be called the Pittsburgh, Shenango and Lake Erie Railroad
Company, defendant herein in consideration of the perform-

ance by said contractors of their agreements therein made to cause such consolidation to be effected, and pay off certain debts and liens then existing upon the property.    The complaint charges that this contract is unlawful and designed to give to said Dick and A. C. Huidedoper undue advantage over the company and its bondholders, without proper consideration, and it is alleged that one of the committee is attorney for the contractors, and another was a creditor whose debt was assumed and agreed to be paid by the contractors; that said members of the committee abused their powers as members in themselves executing the agreement.    It is also charged that certain of the outstanding obligations so agreed to be liquidated by said contractors, either had no existence in fact or were purchased by them from their original holders for a small proportion only of their face value.    The relief asked was that said contract be declared null and void; that the new company be enjoined from delivering to the contractors bond and stock as required by the contract.

Further facts are stated in the opinion which is given in full:

" The demurrer interposed to the complaint raises the question whether any cause of action was pleaded as against the two parties demurring.    It is their contract with the committee of reorganization which is sought to be annulled, and the inquiry is whether any conduct of their own justifies the intervention of a court of equity.    They are independent contractors.    They stand in no trust relation to the bondholders of whom the plaintiff is one and owe them no trust duty. Their right to contract in their own interest is clear, and unless some fraudulent representations on their part, or some fraudulent concealment induced the contract, or they took some dishonest advantage of the parties with whom they dealt there is no ground for interfering with their contract.    The complaint alleges no facts of that character.    The extreme limit to which it goes consists in the allegation that certain debts which they covenanted to pay were debts owing to one or more members of the bondholders' committee with whom their contract was made, and that others were either overestimated or had no real and honest existence.    There is no allegation that they knew of any such fact when they made their agreement, or

represented anything to the committee on the subject, or were interested in any false or simulated debts. The Peninsular Car Co. judgment they owned, and if they bought it at less than its face they were under no obligation to give the consenting bondholders the profit on their purchase. The Reed judgment of $75,000 is said to have had "no existence in fact," but was "used as a pretext to swell the indebtedness." It seems to be admitted that there was such a judgment in form, and yet in some way defective or fraudulent and having no honest foundation. It is not pretended that the committee knew of the defect or even that the contractors had any such knowledge or represented or concealed anything about it, much less that they were at all interested in it. Presumably the list of debts to be paid was furnished them by the committee, who included in it whatever there was reasonable ground to believe the company might be liable to pay, and there is no allegation that either party knew the Reed judgment not to be such an obligation. One of the debts included in the schedule appeared to be due to a receiver of one of the companies who was also a member of the contracting committee. There is no averment that it was not an honest debt and honestly due and which would necessarily need to be paid in the process of reorganization, or was to any extent unfairly or unreasonably estimated, but, however, that may be, the demurring contractors were in no manner responsible for its character or required to enforce the trust duties due from the committee to the bondholders whom they represented. It is enough that they are not shown to have been interested in or parties to any such breach of faith. The same thing is true of the debt to the Exchange Bank and F. W. Huidekoper's interest therein.

" The complaint shows what the authority of the committee was. It was carefully put in writing and signed by the plaintiff himself. The contract made with the demurrants was clearly within the scope of that authority and until some facts are averred which tend to show a fraud on the part of the contractors, or a participation in some fraud of the committee it is not enough to aver conduct on the part of the latter which might amount as between them and the bondholders to

a violation of their trust duties. While there are in the complaint loose general charges of fraud and conspiracy, no facts are averred which involve the agreement of the contractors in legal invalidity. There is an allegation that one of the committee was when appointed the attorney of the two contractors. But they could not appoint him and did not appoint him, and it is not distinctly averred that he continued to be their attorney when the contract was made, or was their attorney in any matters whatever which fell within the scope of the contract. To extend the equitable rule invoked to such a case would carry it to contracts where among the vendors were personal friends or relatives of the vendees, and give it a range and scope almost without a boundary. Such facts might have some weight in establishing an actual fraud or collusion, but are wholly insufficient to set in operation the equitable doctrine which denies to the same man the right to contract on both sides of the agreement when his right is challenged by those to whom he owes trust duties.

"I have said briefly that the contract made was within the authority conferred by the bondholders upon their committee. I base that conclusion upon the whole scope of the power conferred, which looked not only to a reorganization, but to a consolidation with some other company, and contemplated a use of the common fund for whatever was necessary or incidental to the purpose authorized, but especially upon the tenth and fifteenth clauses of the agreement marked A, which authorize a further consolidation, the payment of debts and expenses and removal of liens, and a sale of a part or the whole of the common fund or estate. The case, therefore, shows authority to make the contract, a free action of independent contractors, and no fact warranting an inference of collusion or fraud.

"The judgment should be affirmed, with costs."

*Wm. Safford* for appellant.

*Frank Sullivan Smith* for respondent.

FINCH, J., reads for affirmance.
All concur.
Judgment affirmed.