## LLANO IMPROVEMENT & FURNACE CO. v. PACIFIC IMP. CO.

(Circuit Court of Appeals, Fifth Circuit. February 19, 1895.)

### No. 338.

CONTRACTS—CONSIDERATION—SETTLEMENT OF DISPUTE.

The L. Co., a corporation organized for various specific purposes, comprehended in the general purpose of developing a populous business center in a new country, made a contract with the P. Co., by which, in consideration of the P. Co.'s procuring the construction of a railroad to the L. Co.'s town site, it agreed to donate a right of way and land for terminal facilities, and to pay a cash bonus. In order to procure the making of this contract, certain stockholders of the L. Co. gave to it their notes for certain treasury stock, upon the agreement that, if the contract was carried out, such notes should be paid, and the stock become the property of the

makers; otherwise the notes to be returned to the makers, and the stock to the L. Co. These notes and certain others, made by subscribers to a donation to secure the railroad, were turned over to the P. Co. as collateral for the agreed bonus. The P. Co. fully performed its contract, but the L. Co. was unable to pay the bonus, and the amount collected on the notes fell short of the amount due to the P. Co. The P. Co. then offered to accept a note made by the L. Co., and to return to it the uncollected notes and the stock for which they were given, which was attached to them as collateral, and such offer was accepted by the L. Co., and the note given. Most, but not all, of the stockholders of the L. Co. knew and approved all these transactions. In a suit by the P. Co. on the note, it was claimed that the contract, and all transactions relating to it, were ultra vires and void. *Held* that, whether such contract was in fact valid or void, there was, at the time the note was given, sufficient ground for litigation, if the L. Co. had chosen to treat it as void and refuse performance, to constitute a good consideration for the note, and that the P. Co. was entitled to recover on such note.

In Error to the Circuit Court of the United States for the Western District of Texas.

William J. Moroney, for plaintiff in error.

R. S. Lovett, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and TOULMIN, District Judge.

McCORMICK, Circuit Judge. This action is founded on a promissory note. The parties to it are the Pacific Improvement Company, which we will call the plaintiff, and the Llano Improvement & Furnace Company, the defendant. The pleadings follow the Texas system of petition and answer. The plaintiff in its original petition averred the status of the parties; the making by the defendant of the note; its terms, substantially, and legal effect; the failure of the defendant to pay the same at or after maturity; and prayed for process and judgment. The defendant in its amended answer, on which the case was tried, besides other pleas that we do not deem it necessary to notice, pleaded that it never made the note. The real ground of this plea is the claim by the defendant that a previous contract, and the transactions both prior thereto and subsequent, resulting in the execution and delivery of the note by the president of the defendant, and its making, were all beyond the corporate powers of the defendant. In accordance with section 649 of the Revised Statutes, the case was tried by the circuit court without a jury. The trial court made special findings of facts, and gave judgment in favor of the plaintiff for the amount of the note. It appears that the defendant was incorporated March 16, 1889, under the general laws of Texas. It is expressed in its charter that:

"This corporation is formed for the following purposes and objects: The transaction of any manufacturing or mining business in the counties of Llano and Mason, state of Texas; the supply of water to the public; the manufacture and supply of gas, or the supply of light or heat, to the public by any means; the transaction of a printing or publishing business; the establishment and maintenance of hotels; the construction and maintenance of street railways; the erection of buildings and accumulation and loan of money; the construction and maintenance of bridges across the Llano river; and the con-

struction and maintenance of canals for the purpose of irrigation and manufacturing,—any or all of the said proposed operations of this corporation to be located in cities, towns, or villages in Llano or Mason counties, state of Texas."

The county of Llano is located on the river of that name, partly on each side of the river. The county town bearing the same name is situated on the south side of the river, at a point about 100 miles northwest from the city of Austin. In 1889 it was not incorporated. It then had about 1,000 inhabitants. The defendant purchased several thousand acres of land just across the river from the town of Llano for a town site. It purchased certain iron mineral lands, and leased others, situated 10 miles or more from the town. It erected and established two hotels in or near the town. The promoters of defendant contemplated extending short lines of railroad from the owned and leased mineral lands into the town. In 1891 the Austin & Northwestern Railroad Company had extended its line of road only to a point in Burnet county about 30 miles distant from the town of Llano. There was and is no other railroad nearer Llano. The stockholders, directors, and officers of the defendant were all and equally desirous of having a railroad built to the lands of that company on the north side of the Llano river. The defendant then held 10,000 shares, of the par value of $100 each, of what it styles its "treasury stock." To the extent of the defendant's power to take such action, the stockholders and directors authorized the president and a majority of the executive committee of the directors to use these 10,000 shares of treasury stock to secure the building of a railroad to its lands across the river from the old town of Llano. The plaintiff, in some of the ways familiar to such parties, had a controlling influence in or over the Austin & Northwestern Railroad Company. The president and executive committee of the defendant opened negotiations, therefore, with the plaintiff, and endeavored to secure a contract with the plaintiff to extend the railroad as desired for such portion of the defendant's treasury stock as might be agreed on by the parties. The plaintiff would not accept the stock as a consideration for such a contract to extend the railroad, but expressed a willingness to contract to make the extension by the 1st day of July, 1892, if the defendant would contract with satisfactory security to donate the required right of way, grounds for terminal facilities at Llano, and a certain cash bonus, to be paid within 30 days after the completion of the road by or before July 1, 1892. Thereupon the president of the defendant, with the full knowledge and actual individual approval of all of the directors and of a majority of the stockholders, induced certain of the stockholders of the defendant to execute their several promissory notes, aggregating $120,000, in favor of the defendant, for the 10,000 shares of the defendant's treasury stock, estimated at 12 cents on the dollar of its par value, attaching to the respective notes as collateral security the equivalent amount of the stock taken by each maker, with the distinct oral agreement at the time that if the contemplated contract for the extension of the road was not made these notes should be

returned to the makers, and the stock restored to the corporation; otherwise, on the securing of the contemplated contract for the extension of the railroad, these notes were to become absolute. The president of defendant, and others of its stockholders and directors, procured to be made by certain citizens of the city of Austin subscriptions to the donation required to secure the desired railroad extension. These Austin subscription notes were drawn payable to the order of Charles Dillingham, who was then president of the Austin & Northwestern Railroad Company, and connected in some way with the plaintiff, but were delivered by the makers to the president of the defendant. He thereupon made the contract of 6th October, 1891, with the plaintiff, which purports to bind the plaintiff to build the road by the 1st of the next July, and to bind the defendant to furnish the required right of way, ground for terminal facilities at Llano, and a cash bonus of $72,000, to be paid within 30 days after the completion of the road; and, to secure the purported obligation of the defendant, its president indorsed and delivered to the plaintiff the notes, with the treasury stock attached, to the aggregate amount of $73,200, and also delivered to the plaintiff the Austin subscription notes, to the aggregate amount of $29,149. The remainder of the treasury stock notes, to the aggregate amount of $46,800, now become absolute by the making of the contract of 6th October, 1891, were retained for the account of the defendant, and used by it as its bills receivable. At the request of the president of the defendant, the plaintiff placed the Austin subscription notes with J. H. Raymond & Co., bankers at Austin, and the treasury stock notes, transferred to it, with the First National Bank of Llano, under the following letter of instructions:

"These notes are placed in your hands with the following instructions: Until notes are paid, they are held subject to my order. When the notes are collected, the amounts paid are to be held in trust for the Pacific Improvement Company and the Llano Improvement & Furnace Company, and in accordance with the terms of an agreement made and entered into on the 6th day of October, 1891, by and between said parties."

The plaintiff fully performed its part of the contract of 6th October, 1891. The defendant furnished the right of way and ground for terminal at Llano, but was not able to pay the cash bonus within 30 days after the completion of the road. Negotiations were then opened between the managing officers of the defendant and the plaintiff for an extension of time or an adjustment, and just prior to November 21, 1892, the president of the defendant informed the directors that he believed he could induce the plaintiff to accept the defendant's note for $25,000 in settlement of its obligations under the contract of October 6, 1891, and release the notes yet remaining with the Austin and Llano banks, provided the defendant would give its note for that amount, and let the $20,000, which the Austin bank had collected on the notes placed with it, and the $27,000, which the Llano bank had collected on the notes placed with it, be at the same time paid to the plaintiff. The majority of the directors, and all spoken to on the subject, individually expressed their satisfaction with such an arrangement, if it

could be made. It was made, and the note sued on, bearing date 21st November, 1892, was given the plaintiff. On the same day that this note bears date there was a called meeting of the stockholders of the defendant, at which a majority was present, and it was unanimously "resolved, that any of the makers of the notes, amounting to $46,200, which were held by the Pacific Improvement Company, and are now held by the Llano Improvement & Furnace Company, be permitted, if they so elect, to take up their notes by delivering to said L. I. & F. Co. the stock which is attached to said notes, which stock is to be accepted as full payment of such notes; and, further, that the president of the company be instructed to enforce payment of such notes as are not paid by voluntary delivery of attached stock." The twenty-first paragraph of the special finding is in the following words:

"A majority of the stockholders and directors fully acquiesced in all of the aforesaid transactions, and among those cognizant of the transaction there was no expression of dissatisfaction at any time prior to the institution of this suit. Some of the stockholders, however, did not know of said contracts with the plaintiff; did not know that the defendant had incurred any personal liability to the plaintiff; did not know of the execution of the note sued upon in this case; have not expressed their approval of the same; and would not have approved the same had they been advised of said transactions."

During the negotiations between the parties, after the completion of the road, "there was no question as to the validity or invalidity of the original contract of date October 6, 1891, or as to the extent of defendant's liability under said contract; the only question being as to the financial ability of defendant company to pay the obligations then admitted by the officers of the defendant company to be due under said original obligation." It cannot be seriously disputed that, if the original contract was within the power of the defendant to contract, the plaintiff is entitled to all it claims in this action, and the defendant has no support for its defenses or for its counterclaims. All of the constituents of the defendant appear to have from its organization and all along construed its charter powers to authorize the development of a populous business center at the selected seat of its expressly authorized operations. Many features in the group of its purposes and objects set out in its charter strongly support that construction. It cannot be questioned at this time of day that, at an inland situation like the county of Llano, many of the purposes and objects of the defendant could not be successfully pursued, or its express powers exercised, without facilities of railroad transportation. Its express powers charge the defendant with no duty to the public which the contract of 6th October, 1891, in any degree disabled it to perform. It is contended, and it is found to be true, that at that time the defendant was insolvent, and has been so ever since. The want of opportunity or the failure to make such a contract at or soon after its organization may have produced or promoted this condition of its being, but the contract of 6th October, 1891, certainly did not either produce or promote that condition. Being, then, insolvent, what it called its "treasury stock" was in fact without value. The oral agreement on which certain of its stockholders gave their sev-

eral notes for this treasury stock shows that they each considered it valueless until the contract to build the road could be secured, and that then it would be worth 12 cents on the dollar of its par value. These notes, aggregating $120,000, must, in the absence of any proof showing a different actual value, be taken to be of their face value. Out of less than two-thirds of them in amount, selected by the defendant for the satisfaction of the plaintiff's demand for collateral, there was collected in a few months the sum of $27,000. The remainder, $93,000 in amount, remained for account of defendant as its bills receivable, against which the defendant expended $3,000 in securing right of way through the property of others, and parted with certain of its own lands, of the value, in June, 1892, of $5,000, showing an apparent net gain to the defendant on the actual transactions of $85,000. It is not apparent, therefore, that there was any actual diversion of the funds of the defendant by reason of the original or subsequent negotiations with the plaintiff. In the view we take of this case, we find it unnecessary to decide whether or not the contract of 6th October, 1891, was void for want of power in the defendant to so contract. It appears that at and prior to the 21st of November, 1892, there was in bank in Austin and Llano the sum of $47,000 in cash, held in trust by the respective banks for the plaintiff and the defendant, in accordance with the terms of the contract of 6th October, 1891; and there were at the same time in the hands of those banks, and severally held by them, subject to the order of the plaintiff, promissory notes that had been transferred and delivered by the defendant to the plaintiff of the aggregate face value of about $53,000, to the larger portion of which, aggregating the sum in face value of $46,200, there were attached as collateral security 3,850 shares of the stock of the defendant. The plaintiff had fully performed its part of the contract of 6th October, 1891. Now, whether that contract was in truth void or valid, if the defendant had then decided to treat it as void, and refuse performance, here was abundant subject for litigation, and sufficient consideration for making the note on which this action is brought. Cook v. Wright, 1 Best & S. 559; Tuttle v. Tuttle, 12 Metc. (Mass.) 551; Market Co. v. Kelly, 113 U. S. 199, 5 Sup. Ct. 422. We conclude that this case comes within the authority of the cases just cited, and is subject to the recognized rules which underlie those decisions. We are of opinion that the special findings support the judgment of the circuit court, and that judgment is affirmed.