## CENTRAL TRUST CO. v. CARTER et al.

### (Circuit Court of Appeals, Fifth Circuit. December 15, 1896.)

### No. 525.

**1. RAILROAD REORGANIZATION AGREEMENT—REORGANIZATION COMMITTEE'S AUTHORITY.**

The holders of the bonds of an insolvent railway company entered into a trust agreement with certain persons, constituting a reorganization committee, and a trust company, by which such reorganization committee was authorized, in very broad terms, to procure the sale of the railway; to adjust, by arbitration or otherwise, the rights of a construction company which had contracted to build the road; to negotiate and compound with holders of claims against the railway, and provide for payment thereof; and to borrow money, and pledge as security the bonds deposited under the agreement. This committee entered into an agreement with certain parties holding claims against the railway company and the construction company, some of whom had obtained judgments declaring contractors' liens in their favor against the railway company, by which agreement these claims were assigned to the committee, and certain securities of the railway company, held by the construction company, were released, in consideration of the promise of the committee to deliver to such claimants negotiable certificates for certain sums, payable in cash, and secured by the bonds deposited with the committee. The claimants performed their part under this agreement, but the committee never delivered the certificates. Subsequently the railway was sold under foreclosure, and the court decreed, upon an intervening petition by the claimants who had assigned their claims to the committee, that they were entitled to be paid the amount of the promised certificates out of the proceeds of sale applicable to the payment of the bondholders, from which decree the trustee for the bondholders appealed. *Held*, that the agreement made with the claimants, who had at least apparent rights against the railway, was within the authority of the committee, and, though the certificates were never delivered, such agreement should be treated as a mortgage on the bonds, and the claimants were entitled to be paid out of the proceeds of the sale.

**2. SAME—FUND IN COURT—INTERVENING PETITION.**

*Held*, further, that the possession by the court in which the foreclosure suit was pending of the fund applicable to the payment of the bonds was sufficient to authorize it to entertain the petition of the claimants asserting a mortgage lien upon such bonds.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

An original bill was filed by appellant in the circuit court against the Chattanooga Southern Railway Company for the appointment of a receiver, and to foreclose a mortgage executed by the railway company to secure certain bonds by it issued. An order was duly made by the court consolidating that cause with the suit of E. Summerfield against the railway company. On the 18th day of September, 1892, a decree was passed foreclosing the mortgage, and ordering a sale of the property. Sale was made by the special commissioner February 14, 1895, which was confirmed by the court March 16, 1895, in the following decree:

"Decree Confirming Sale, and Ordering Conveyance and Possession.

"It appearing to the court by the report of Joseph W. Burke, special commissioner to make the sale of the above-stated railway, that he did, on the 14th day of February, 1895, at Gadsden, in Etowah county, state of Alabama, expose for sale the said Chattanooga Southern Railway, with all its rights, properties, appurtenances, and franchises, and that the same was purchased by the reorganization committee of said railway, as the purchasing committee, to wit, H. A. V. Post (chairman), Russell Sage, Thomas H. Hubbard, Henry L. Lamb, and Newman Erb, at and for the price of four hundred thousand dollars, subject, however, as recited in said decree under which said sale was made, to certain preferential liens and claims, and to all and singular the terms and conditions in said decree set forth; and it further appearing that said purchasers have made the

payment of fifty thousand dollars, in cash, to said Joseph W. Burke, special commissioner, as provided in said decree; and it being shown to the satisfaction of the court that the statements in the report of said special commissioner of the sale of said property are true, and no objections being made to the confirmation of said report: It is therefore considered, ordered, and decreed by the court, on motion of counsel for complainant, Central Trust Company of New York, that the said report of said special commissioner be, and the same is, in all respects confirmed, and the sale made by him on said 14th day of February, 1895, to said H. A. V. Post (chairman), Russell Sage, Thomas H. Hubbard, Henry L. Lamb, and Newman Erb, the purchasing committee, as joint tenants, and not tenants in common, of all and singular the railway, equipment, property, and franchises of the Chattanooga Southern Railway Company, as described in the decree of foreclosure entered in this cause on the 18th day of September, 1892, at and for the sum of four hundred thousand dollars ($400,000), by said purchasing committee bid, be, and the same is in all things ratified, approved, confirmed, and made absolute; subject, however, to all the receiver's debts, preferential claims, and equities reserved, and to all and singular the conditions of purchase as recited in said decree, and the continued right of this court to adjudge and declare what receiver's or corporate debts are prior in lien or in equity to the lien of the mortgage herein foreclosed, or ought to be paid out of such proceeds of sale in preference to the bonds issued under said mortgage, including the claims set up by the intervention of Carter & Rogan and others, or of the holders of certificates issued under the contract exhibited thereto, if hereafter so adjudged by the court. * * * It is further ordered, adjudged, and decreed that the special commissioner, Joseph W. Burke, be, and he is hereby, authorized and directed, on request of said purchasers, to sign, seal, execute, acknowledge, and deliver a proper deed or deeds of conveyance to the said purchasing committee, or their nominee, conveying all and singular the railway, equipment, property, and franchises of the said Chattanooga Southern Railway within the states of Tennessee, Georgia, Alabama, and all property, rights, and franchises that the said Joseph W. Burke, as receiver of said Chattanooga Southern Railway Company, has acquired during the time of his receivership, free from any equity of redemption of the said Chattanooga Southern Railway Company, or any party to this suit, or any one claiming by, under, or through the said Chattanooga Southern Railway Company, or any party to this suit. The court reserves full power, notwithstanding such conveyance and delivery of possession, to retake and resell said property this day confirmed to said purchasers, if they fail or neglect fully to complete such purchase and comply with the orders of this court in respect to full payment and performance of their said bid, or to pay into court, in accordance with such decree of sale, all such sums of money hereafter ordered by this court to be paid into its registry to discharge any and all such debts, liens, or claims as the court may adjudge and decree ought to be paid out of the proceeds of sale in preference to the bonds secured by the mortgage of the Chattanooga Southern Railway Company herein foreclosed.

"In open court this 16th March, 1895."

The Chattanooga Construction Company of West Virginia entered into a contract with the railway company for the construction of the road, and, not being paid by the railway company for work and labor performed and materials furnished in the progress of the work of construction, filed its petition of intervention in the consolidated causes, by which it sought to recover against the railway company the sum of $328,518.23. This intervention is still pending, undetermined, in the circuit court. Appellees, as contractors, constructed a portion of the road, and, being unable to collect the amount due them for work and labor done and materials furnished, filed their suit against both the railway company and the construction company to recover the same, in the superior court of Walker county, Georgia; and judgment was duly rendered in their favor, November 24, 1892, for the principal sum of $34,818.60, and interest for $3,078.25 to the date of judgment. A contractor's lien was decreed to exist against the property of the railway company, including the railway, and the same was ordered sold to satisfy the judgment. On being informed of the pendency of the foreclosure suit in the United States court, the judge of the superior court of Walker county ordered a suspension of further proceedings, and the sale did not take place as originally ordered. On or about November 26, 1892, the Merchants' National

Bank of Chattanooga, appellees, et al., filed a bill in the United States circuit court for the Eastern district of Tennessee, at Chattanooga, against the construction company, for the appointment of a receiver; for an accounting and ascertainment of the debts of the construction company, and the marshaling of its assets. In the suit a receiver was appointed on the 30th day of December following. There appears in the record an instrument, entitled "Trust Agreement," bearing date February 1, 1892, to which the holders of the first mortgage bonds of the Chattanooga Southern Railway Company, the Atlantic Trust Company, and H. A. V. Post, Russell Sage, and associates are parties. By this trust agreement, Post, Sage, and associates were nominated and constituted a reorganization committee. The Atlantic Trust Company was designated as a depositary to take charge of all bonds deposited with it by the bondholders; the bonds to be held by the depositary for the use, and subject to the orders, of the reorganization committee. When the reorganization committee made the contract with appellees hereinafter set forth, on, to wit, February 17, 1893, there was on deposit with the Atlantic Trust Company, subject to the order of the committee, $819,000 principal, par value, of the first mortgage bonds of the railway company, secured by mortgage executed to the appellant as trustee. In December, 1894, the Mercantile Trust Company became the successor of the Atlantic Trust Company, receiving the bonds theretofore deposited with the latter. On February 14, 1895, the day the road was sold by order of the court, there was on deposit with the Mercantile Trust Company $1,418,000 principal, par value, of such bonds; and on February 17, 1896, the entire issue of bonds, to wit, $1,440,000, was on deposit with said trust company, subject to the order of the committee. Pending the litigation in the United States circuit court at Chattanooga, the reorganization committee entered into the following contract with the Merchants' National Bank, appellees, and others, for the adjustment and settlement of their respective claims:

" * * * This agreement, made and entered into on this February 17, 1893, by and between T. B. Redmond, J. B. Carter, R. M. Rogan, partners under the firm name and style of Carter & Rogan, and Dun, Armstrong & Co., of the one part, who hold claims and liens on the property of the Chattanooga Southern Railway and the Chattanooga Construction Company of West Virginia for work and labor done and material furnished in the building and construction of the said railroad, said parties of the first part to this agreement, hereafter called 'Contractors,' and the reorganization committee of the Chattanooga Southern Railway, composed of H. A. V. Post, Russell Sage, Henry L. Lamb, Walter Stanton, and Newman Erb, parties of the second part, hereafter called 'Committee,' witnesseth:

"First. The parties of the first part hereby severally sell, transfer, and assign, for the consideration herein named, to the aforesaid committee, all their debts, claims, demands, equities, liens, and remedies now held and owned by them, or either of them, in law or equity, against the Chattanooga Southern Railway and the Chattanooga Construction Company of West Virginia, or either of them, and the claims to be transferred free from all claims for attorney's fees; and the assignee has the right to use the name of the assignor in bringing any suit or suits in any court to enforce the payment of the several debts assigned, or the liens thereto attaching, but the assignee will assume all the cost of such suit or suits. The committee assume the payment of all the court costs heretofore incurred by the contractors in enforcing said demands. The assignments are made without recourse on the contractors. The claims hereby assigned are as follows:

T. B. Redmond, debt and interest to February 17, 1893, sued on in superior court of Walker county, Ga.:

| | |
|---|---:|
| Principal | $26,019 34 |
| Interest to February 17, 1893 | 2,368 59 |
| Total | $28,387 93 |

| | |
|---|---:|
| Carter & Rogan, judgment Walker county superior court, dated November 24, 1892, with interest to Feb. 17, 1893 | $38,430 20 |

| | |
|---|---:|
| Carter & Rogan for S. H. Flowers' account | $ 309 21 |
| Interest to February 17, 1893 | 18 00 |
| | $ 327 21 |

Dun, Armstrong & Co., notes and accounts, with interest from
  Feb. 17, 1893................................................$13,072 58

Dun, Armstrong & Co., for D. W. Liddell, subcontractor.........$ 3,986 27
Interest from April 24, 1891, to February 17, 1893, at 8% (Alabama
  rate) .........................................................    563 75

    Total .....................................................$ 4,550 02

J. E. Moore, notes.............................................$   936 20
Interest from February 11, 1891, to February 17, 1893, at 8 per cent.   154 04

                                                               $ 1,090 24

J. M. Langston, notes May 24, 1891.............................$   378 40
Interest to February 17, 1893..................................     52 33

    Total .....................................................$   430 73

"And the parties of the first part agree to make any other and further transfer and assignment of said claims which may be required by the committee, so as to fully invest in said committee title to said claims, and to deliver over to said committee notes and other evidences of said indebtedness hereby transferred and assigned, as hereafter provided.

"Second. A decree has been drafted in the case of the Merchants' National Bank v. The Chattanooga Construction Company of W. Va., which is signed and assented to, and will be entered on the records as of this date.

"Third. The party of the second part, in payment for the claims hereinbefore transferred, agrees to issue to said parties of the first part, respectively, negotiable certificates, payable in cash, for one-half in amount of said debts, principal and interest, so transferred,—said certificates to be issued by said committee, and payable within sixty days after decree is entered in the United States circuit court at Atlanta confirming the sale of the Chattanooga Southern Railway, and payable not later than December 1st, 1893, in any event, and to bear six per cent. interest per annum from this date; and said certificates shall recite that they are secured by the bonds and other securities deposited with said reorganization committee, and held by the Atlantic Trust Company of New York, and shall be countersigned by the said trust company. The said committee also agrees to issue to said parties of the first part, respectively, other negotiable certificates for the other one-half in amount of said debts so transferred; said certificates to entitle the holders thereof to the same securities, pro rata, as the depositors of first mortgage bonds of the Chattanooga Southern Railway with said committee are or shall be entitled to under the agreement by which said bonds were deposited with said committee; said certificates to be also countersigned by said Atlantic Trust Company.

"Fourth. The certificates above provided for shall be delivered to J. H. Barr and Foster V. Brown, as trustees, and be delivered to the first parties herein only when and as the notes and other evidences of the debts hereinbefore transferred are delivered over to said trustees for said committee. Said certificates shall be issued to said trustees, and in such amounts, as the said several contractors shall direct, and be delivered by the said trustees to such persons as the contractors may direct.  *   *   *"

The bank, appellees, and their associates performed in good faith their part of the contract, as appears by the following order of court, which directed the receiver of the construction company to make a formal assignment of its claims against the railway company to the committee:

"Merchants' National Bank et al. vs. Chattanooga Construction Company.

"In this case, it being made to appear to the court that the claims sued on in this case have been transferred and assigned by complainants to the reorganization committee of the Chattanooga Southern Railway (said committee known as the 'Post Committee'), and that this assignment was made by and with the consent of the defendant, and in the assumption by the said reorganization committee of the debts sued on in this cause, and certain other debts of said construction company, and as part consideration for said assumption the complainant and defend-

ant have agreed that all claims of defendant, of whatever nature, kind, and char-. acter, owned by it against the Chattanooga Southern Railway for the building of the Chattanooga Southern Railway, equipping it, or on any other account whatever, as well as any and all equity it may or might own in any of the bonds of the Chattanooga Southern Railway, should be assigned to said reorganization committee, and it appearing to the court that this is a proper arrangement to be made: It is therefore decreed by the court, all parties agreeing thereto, that the receiver of the Chattanooga Construction Company of West Virginia be, and he is hereby, authorized and directed to make a formal assignment of said claims above referred to, conveying to said committee all the rights and claims of said company in and to said assets of the defendant company. The costs of this cause will be paid by the defendant company, and the receiver is allowed for his services and that of his attorney the sum of $500, to be taxed as a part of the costs of the cause, which amounts have been paid, and the suit dismissed and stricken from the docket."

In compliance with the order of court, the receiver assigned the claims of the construction company to the committee, and the latter accepted the assignment, and received the assets of the construction company, including 74 bonds, of the denomination of $1,000 each, of the railway company. The reorganization committee failed to deliver to appellees, as contemplated by its agreement, a negotiable certificate for one-half of their indebtedness; and, to enforce the payment of their claim, they filed a petition in intervention in the consolidated causes, praying that they be ordered to be paid out of the proceeds of the sale of the railway, before the payment of the bonds of the railway company, the sum of $19,378.81, with interest. The reorganization committee and appellant were made parties to the proceeding, and a copy of the petition was served upon their respective counsel. The committee appeared specially for the purpose of filing a motion to dismiss the intervention for want of jurisdiction. Appellant interposed a demurrer to the petition, and also answered. The petition of appellees and answer of appellant were referred by the court to W. P. Hill, Esq., special master, who reported in favor of the allowance of appellees' claims. The report concludes as follows: "I find that the proceeds of the sale of this road which would go, after the payment of the expenses of the receivership and other debts already adjudged preferential, to the bondholders, is equitably charged with the payment of interveners' claim, to wit, the sum of $19,378.70, with interest at 6% from February 17, 1893; this being one-half of the debt." The report of the master was excepted to by appellant, and the exceptions, together with the demurrer of appellant to the petition in intervention, and the motion of the reorganization committee to dismiss the same, were overruled by the court, and the report confirmed, on the 18th day of June, 1896. The confirmatory order concludes: "It is further ordered that, out of the proceeds of the sale of said railway applicable to the bonds of said railway company, the said John B. Carter and R. M. Rogan, as partners under the firm name of Carter & Rogan, do recover and be paid the sum of nineteen thousand three hundred and seventy-eight dollars and seventy cents ($19,378.70), as principal, with interest from February 17, 1893, thereon, at the rate of six per cent. per annum, and all costs of this proceeding, and that the same be paid into court for the use of said interveners by the purchasers of said railway, in conformity with the order confirming the sale of said railway, within twenty days from this date, and that in default thereof said interveners may apply to the court for relief, as provided in said order of confirmation. The costs are adjudged against the respondents in said intervention."

From this decree the Central Trust Company alone prosecutes an appeal.

H. B. Tompkins and R. C. Alston, for appellant.

Alex. C. King and J. J. Spalding, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge, after stating the case, delivered the opinion of the court.

This appeal brings up for review the decree rendered by the circuit court sustaining the master's report, and ordering the payment

of appellees' claim out of funds required to be paid into court by the purchasers of the railway. Appellant contends that the reorganization committee was without power to make with appellees the contract of February 17, 1893, and hence the latter are not entitled to the payment of their claim out of the proceeds of the sale of the railway. The reorganization committee had only such power to contract with appellees as was conferred upon it by the trust agreement of February 1, 1892, and appellees, in dealing with the committee, were chargeable with notice of the terms and provisions of that agreement. To the trust agreement there were three parties,—the holders of the first mortgage bonds of the Chattanooga Southern Railway Company; Post, Sage and others, constituting the reorganization committee; and the Atlantic Trust Company of New York. The first paragraph of the agreement makes each holder of any of the bonds who shall deposit them with the Atlantic Trust Company a party to the agreement, and by the twenty-third paragraph it is provided:

"The deposit of securities, and receipt of certificates issued therefor, shall have the same effect as if the holders of such certificates had actually subscribed to this agreement."

The holders of all bonds issued by the railway company, amounting to $1,440,000, had, prior to the decree complained of, deposited their securities with the Mercantile Trust Company, which had become the successor of the Atlantic Trust Company; and they thus became, by the terms of the first and twenty-third paragraphs, above referred to, parties to the trust agreement. Any contract, therefore, entered into by the reorganization committee in the execution of its trust, and within the scope of its delegated authority, became valid and binding upon the bondholders, upon the familiar principle that the acts of an agent, done and performed within the scope of his agency, bind the principal. Did the committee exceed its authority in negotiating with appellees? An inspection of the trust agreement will disclose the comprehensive powers with which the reorganization committee was invested. It was authorized to procure, by any and all legal means, the sale of the railway, and to assist in the prosecution of, and become a party to, all suits instituted for that purpose; to purchase, as joint tenants for and in behalf of the bondholders, the property, at any sale made under a decree of foreclosure, at a price within its own discretion. The Atlantic Trust Company was instructed by the terms of the agreement to hold the bonds deposited with it, subject to the order and discretion of the committee, or to dispose of the bonds as the committee might direct. The latter was authorized to designate one or more of its members, or any other person, to attend any judicial sale, and bid off the property, and was generally empowered to employ such agents or attorneys as it might deem necessary and proper. In the event of a purchase of the railway, the committee was authorized to take possession of the property and operate it until a new company should be formed, and full power was conferred upon it to do all acts and things necessary and proper, in its judgment, to execute the provisions of the trust agreement. The committee was

further empowered to carry out the plan of reorganization without foreclosure, if it could be lawfully done. Paragraphs 15 and 16 of the agreement are as follows:

"(15) The relations and rights of contractors and of the Chattanooga Construction Company are to be determined by a court or courts of competent jurisdiction, or by the assent of the said parties of the second part, or by arbitration, as the said parties of the second part may determine; and the said parties of the second part are hereby authorized and empowered to negotiate and compound with the holders of claims against the said railway, and to make due provision for the payment and adjustment of the same, upon such terms as they shall find to be reasonable and proper, to the end that the said corporation shall be free and clear from the obligations thereof. (16) The parties of the second part shall have power to borrow such money, not exceeding twenty per cent. of the par value of bonds and coupons deposited hereunder, as may be necessary for the carrying out of this agreement, and, as security for the payment of such money, to pledge the said bonds and coupons deposited hereunder, and to contract for the extension of the time of the payment of such loans from time to time."

The powers conferred upon the committee appear to be as ample and comprehensive as language can make them. Armed with such authority, the committee entered into the compromise agreement of February 17, 1893, by the terms of which appellees and others agreed to transfer and assign to it the claims, which they, respectively, held against the railway company and the Chattanooga Construction Company; that of appellees being in the form of a judgment recovered by them in the superior court of Walker county, Ga. The agreement not only embraced a settlement of the claims of the individuals subscribing it, but further contemplated and provided for the assignment to the committee of the claims held by the Chattanooga Construction Company against the railway company. In consideration of the settlement, and transfer to the committee of the evidences of indebtedness held by the parties, the committee agreed to issue to appellees, in payment of that part of their claim involved in this suit, a negotiable certificate, payable in cash. This method of payment was expressly authorized by the following clause of the agreement:

"Third. The party of the second part, in payment for the claims hereinbefore transferred, agree to issue to said parties of the first part, respectively, negotiable certificates, payable in cash, for one-half in amount of said debts, principal and interest, so transferred,—said certificates to be issued by said committee, and payable within sixty days after decree is entered in the United States circuit court at Atlanta confirming the sale of the Chattanooga Southern Railway, and payable not later than December 1st, 1893, in any event, and to bear six per cent. interest per annum from this date; and said certificates shall recite that they are secured by the bonds and other securities deposited with said reorganization committee, and held by the Atlantic Trust Company of New York, and shall be countersigned by the said trust company."

Agreeably to the stipulation of the parties, the claims were duly assigned to the committee. Appellees completely performed their part of the contract, and, notwithstanding the acceptance by the committee of the claims so assigned to it, there was an utter failure on its part to issue to appellees the negotiable cash certificate required by the terms of the agreement. The committee is passive, and not complaining of the decree. But the contention is advanced by appellant that the committee, in negotiating with appellees, exceeded its authority, and its acts are therefore not binding upon

the bondholders. Appellant insists that the authority of the committee was limited to the settlement of claims against the railway company, and only such as were entitled to priority of payment over the bondholders. And it maintains that the claim of appellees was against the Chattanooga Construction Company, and that such a demand, although for work done and materials furnished in the construction of the railway, did not operate as a lien upon the property of the railway company. Whether appellees, as contractors, in their effort to fix a lien upon the railway, conformed to the requirements of the Georgia laws, and whether the judgment recovered by them in the superior court of Walker county, Ga., may be held to be a lien superior or inferior in rank to that of the mortgage under which the bondholders claim, are questions which we do not deem it necessary to determine. It is nevertheless true that the judgment, upon its face, recites the existence of a contractor's special lien upon the road and other property of the Chattanooga Southern Railway Company, and that the court ordered a sale of the property to satisfy the decree. Hence the question of the existence of the lien was necessarily involved in some doubt and obscurity, the solution of which was remitted to the judgment and determination of the reorganization committee, by the terms of its power of appointment. The settlement with appellees might therefore be easily sustained on the ground that the discretion vested in the committee justified it in the compromise of a claim of doubtful validity. Market Co. v. Kelly, 113 U. S. 199, 5 Sup. Ct. 422; Llano Imp. & Furnace Co. v. Pacific Imp. Co., 13 C. C. A. 625, 66 Fed. 526; Brooks v. Dick, 135 N. Y. 652, 32 N. E. 230. The authority with which the committee was clothed in reference to all matters touching the settlement of claims against the railway company, and in perfecting the scheme of reorganization, was practically unlimited; and why the authority should not embrace within its scope the settlement of appellees' indebtedness, we are at a loss to understand. The answer of appellant to the intervening petition of appellees contains no charge or intimation of fraud or bad faith on the part either of the committee or appellees, and the settlement effected, being plainly within the limit of the authority delegated to the committee, should not be disturbed.

In the contract of settlement with appellees, as already stated, the committee agreed to issue them a certificate, payable in cash, for one-half of their indebtedness, and, further, that such certificate should recite that it was secured by the bonds and securities deposited with the committee. The certificate not being issued to appellees as required by the agreement, upon well-recognized and established equitable principles the agreement should be upheld and enforced as a mortgage upon the bonds. Thus, in Morrow v. Turney's Adm'r, it is said by Mr. Chief Justice Walker, as the organ of the court:

"The bill shows that there was an agreement; and if it was an agreement to give a mortgage, predicated upon the consideration of a debt contracted on the faith of the agreement, it will be upheld and enforced, between the parties and

their representatives, as a mortgage, upon the principle that equity will consider that as done which ought to have been done." 35 Ala. 137; Glover v. McGilvray, 63 Ala. 508; Riddle v. Norris, 46 Mo. App. 512; Riddle v. Hudgins, 7 C. C. A. 335, 58 Fed. 490; 13 Am. & Eng. Enc. Law, p. 608; 1 Jones, Liens, § 27.

The only question remaining for consideration is whether the court erred in entertaining the intervening petition of appellees, and decreeing payment of their claim out of the proceeds of the sale of the railway. It will be observed that when the petition was filed the original foreclosure suit was pending in the circuit court. That court had foreclosed the mortgage, and decreed the sale of the railway, and was, at the time the master's report was confirmed, engaged in administering the fund arising from the sale. Appellees were claiming a mortgage lien on the bonds, and the holders of those bonds were entitled to the proceeds of the sale of the road, after the payment of preferential claims. The claim of appellees should be held to constitute an equitable charge upon so much of the proceeds of sale as was directed by the court to be ultimately distributed among the holders of bonds. And what court was more competent than that to adjust and settle the conflicting claims to the fund in its custody? "It is well settled," says the supreme court, "that, where property is in the actual possession of a court, this draws to it the right to decide upon conflicting claims to its ultimate possession and control (Minnesota Co. v. St. Paul Co., 2 Wall. 609; Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 201, 11 Sup. Ct. 61), and that, when assets are in the course of administration, all persons entitled to participate may come in, under the jurisdiction acquired between the original parties, by ancillary or supplemental proceedings, even though jurisdiction would be lacking if such proceedings had been originally and independently prosecuted." Rouse v. Letcher, 156 U. S. 49, 50, 15 Sup. Ct. 266; Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638. We find no error in the decree of the circuit court, and it is therefore affirmed.