## HAUSELT *v.* HARRISON.

A. entered into a written contract with B., whereby, in consideration of moneys advanced by the latter for the purchase of skins, he agreed that he would tan, finish, and deliver them to B. B., in consideration of a commission on sales, and a further percentage to cover insurance, storage, and labor, agreed to sell them, and put the proceeds, less his commissions and advances, at the disposal of A. It was further agreed that all the skins, whether green, in the process of tanning, tanned, or tanned and finished, should be considered as security for refunding the moneys advanced. The business was, for about six months, carried on until A. became unable, from sickness and financial embarrassment, to proceed with it, and he was then indebted to B., who was aware of his condition. They, in order to carry out the first contract, entered into another, whereby B. was to take possession of A.'s tannery, and run and use it with such materials there as would be necessary to finish and complete the skins, and sell them, the net proceeds to be put to the credit of A. after

deducting advances and expenses. A., four days thereafter, filed his petition in bankruptcy. B. took possession of the tannery, and A.'s assignee in bankruptcy brought replevin for the skins. *Held*, 1. That A. had not an unqualified property in them, but they were subject to a charge in the nature of a mortgage in favor of B., which was binding on the parties and A.'s assignee in bankruptcy. 2. That the second contract was not fraudulent, within the meaning of the bankrupt law.

ERROR to the Circuit Court of the United States for the Western District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. Lewis Sanders* for the plaintiff in error.

*Mr. M. F. Elliott* and *Mr. H. C. Parsons* for the defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This was an action of replevin, brought Feb. 20, 1875, by Jefferson Harrison, assignee in bankruptcy of Edward Bayer, against Charles Hauselt and Charles Korn, to recover possession of certain tanned skins, part finished and part unfinished, and bark, which, it is alleged, had been transferred by Bayer to them, in fraud of the bankrupt law. There was a judgment in his favor, to reverse which this writ of error is prosecuted.

Bayer, who, upon his own petition, filed Nov. 10, 1874, was adjudicated a bankrupt Jan. 18, 1875, owned and was possessed of a tannery at Tioga, Pa., at which he had been conducting the business of a tanner; and Hauselt was a leather-merchant in New York.

On the day of its date, they entered into an agreement in writing, as follows : —

"Articles of agreement entered into this twenty-ninth day of May, 1874, between Edward Bayer, of Brooklyn, New York, party of the first part, and Charles Hauselt, of New York City, party of the second part, witnesseth : —

"In consideration of certain moneys advanced, at the rate of seven per cent per annum, to the party of the first part, for the purchase of veal and kip skins to be tanned, curried, and finished by one Charles Korn, the party of the first part hereby agrees to send all the skins so tanned, curried, and finished by the said Charles Korn, said skins to be labelled and stamped with a label and stamp

bearing the name of said Charles Korn, the skins to be in every way so finished as those now known in the New York market as the 'Korn skin,' exclusive to the party of the second part, he being sole agent for the so-called 'Korn skin' in the United States, in consideration of a commission of five per cent of proceeds of ll sales and a further one per cent to cover fire insurance, storage, and labor; the said party of the second part agrees to sell all such skins to be sent him at the best market prices, the wholesale or case price only to be taken as an average in account sales, small sales to be taken to own account at same price; the party of the second part further agrees to place all proceeds of sales of said skins, after deduction of aforementioned commission and advances for the purchase of veal and kip skins, at the disposal of the party of the first part, for his own use and benefit.

"And it is further-agreed that all the skins, whether green, in process of tanning, tanned, or tanned and finished, shall be considered as security for the refunding, with interest, of all the moneys advanced by the party of the second part, and that all the skins shall be insured for their full value in good companies only.

"Signed, sealed, and delivered on the day and year above written.

"EDW'D BAYER.

"CHARLES HAUSELT,

"Witness:                          By E. HAUSELT, *Att'y.*

"FREDERICK E. SHEARER."

The business contemplated by this contract was carried on, according to its terms, until Nov. 6, 1874. During that time Hauselt had made large cash advances and had received some tanned hides, but on that date was largely in advance, in excess of receipts, and in excess of the value of the property replevied. Bayer, having become broken in health and financially embarrassed, informed Hauselt of his condition, and that, in consequence, he could proceed no further in the execution of the contract between them, and could not otherwise repay his advances. Thereupon the parties entered into the following agreement: —

"This agreement, made the sixth day of November, 1874, between Edward Bayer, of the city of Brooklyn, State of New York, party of the first part, and Charles Hauselt, of the city, county, and State of New York, party of the second part, witnesseth: —

"That whereas an agreement was entered into by the parties hereto on the twenty-ninth day of May, 1874, whereby the party of the first part was, among other things, to tan, finish, and deliver to the party of the second part veal and kip skins purchased in the raw by moneys advanced by the party of the second part; and whereas the party of the first part has become ill and physically unable to complete the tanning and finishing the skins now on hand at the tannery of the party of the first part, and in order that said contract or agreement may be carried out, it is hereby agreed, and the party of the second part is hereby authorized to take immediate possession and sole control of tannery, buildings, and outhouses connected therewith, of the party of the first part, in Tioga Township, Pennsylvania, and run and use the same, together with such of the materials on hand as may be necessary to finish and complete said skins now on hand in said tannery, &c., and to take possession of and sell said skins in any state as may be to the best advantage of the parties hereto, all sales guaranteed by the parties of the second part, the net proceeds of all said sales to be passed to the credit of the party of the first part, after deducting advances and expenses of finishing said skins as per the terms of said agreement.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

> "Edw. Bayer.       [seal.]
> "Charles Hauselt.    [seal.]
> "T. H. Brorman, *Att'y.*

"Signed, sealed, and delivered in the presence of
> "C. H. Seymour."

In pursuance of this arrangement, Hauselt immediately took possession of the tannery and held the property replevied at the time this action was brought.

It may be assumed that at the date of the second contract Hauselt had knowledge of Bayer's insolvency and of his intention immediately to file his petition in bankruptcy.

The court below charged the jury, in substance, as follows: That the property in the skins purchased by means of the advances under the contract of May 29, 1874, was in Bayer; that Hauselt had no right to the possession of them at any time while they were in the process of manufacture; that the only security given by the contract was the personal obliga-

tion of Bayer to consign them to Hauselt for sale, when the manufacture was complete ; that the contract of Nov. 6, 1874, and the possession delivered and taken in pursuance of it, was a transfer, to which Hauselt was not entitled, and constituted a preference within the meaning of the bankrupt law ; that if it was made to make and obtain payment of the whole of the debt to Hauselt, Bayer being in fact insolvent, and Hauselt having reasonable cause to believe him to be so, the transaction was fraudulent and void, and the verdict should be for the plaintiff.

These charges were duly excepted to and are now assigned for error.

Notwithstanding the differences between the contract of May 29, 1874, and that considered in *Powder Company* v. *Burkhardt* (97 U. S. 110), it must be conceded that the legal title to the skins purchased with the money advanced by Hauselt vested in Bayer. But it was not an unqualified property. We cannot agree with the Circuit Court in the construction, that the only security given to Hauselt by the contract was the personal promise of Bayer that he would perform it. To limit the contract to that extent is to deprive its last provision of all force ; for, without it, the personal obligation to deliver the skins when tanned would still remain. The clause providing for security must be held to mean something ; and it declares that the skins themselves, before delivery of possession to Hauselt under the contract, for purposes of sale, shall be considered as security.

It was decided in *Gregory* v. *Morris* (96 U. S. 619) that the legal effect of such a contract is to create a charge upon the property, not in the nature of a pledge, but of a mortgage. Such a lien is good between the parties, without a change of possession, even though void as against subsequent purchasers in good faith without notice, and creditors levying executions or attachments ; and if followed by a delivery of possession, before the rights of third persons have intervened, it is good absolutely.

Nor can it be reasonably doubted that this equitable lien was capable of enforcement. If Bayer had, in disregard and violation of his agreement, undertaken to divert the skins,

whether in a finished or unfinished state, to some other and unauthorized use, it would have been in fraud of the rights of Hauselt, and a court of equity would not have hesitated by an injunction to prevent the commission or continuance of the wrong. Bayer would, under such circumstances, be treated by a court of equity as a trustee, fraudulently dealing with and misappropriating trust property, and Hauselt would be protected in his rights, as owner of a beneficial interest in the property, entitled to the enjoyment of the specific fruits of the agreement.

" Indeed," says Story (Eq. Jur., sect. 1231), " there is generally no difficulty in equity in establishing a lien not only on real estate, but on personal property or on money in the hands of a third person, wherever that is a matter of agreement, at least against the party himself, and third persons who are volunteers or have notice. For it is a general principle in equity that, as against the party himself, and any claiming under him voluntarily or with notice, such an agreement raises a trust." 

If, in consequence of his bankruptcy, the property had come into the possession of his assignees, they would have taken it subject to all legal and equitable claims of others not in fraud of the rights of general creditors. They would be affected by all the equities which could be urged against him. *Cook* v. *Tullis*, 18 Wall. 332. In *Yeatman* v. *Savings Institution* (95 U. S. 764) it was held to be an established rule that, " except in cases of attachments against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of property by the bankrupt is declared by law to be fraudulent and void, the assignee takes the title, subject to all equities, liens, or incumbrances, whether created by operation of law or by act of the bankrupt, which existed against the property in the hands of the bankrupt. . . . He takes the property in the same ' plight and condition ' that the bankrupt held it. *Winsor* v. *McLellan*, 2 Story, 492." In *Stewart* v. *Platt* (101 U. S. 731), it was held that, although the chattel mortgages, involved in that litigation, by reason of the failure to file them in the proper place, were void as against judgment creditors, they were valid and effective as between the parties.

Mr. Justice Harlan, delivering the opinion of the court, said:
" The assignee took the property subject to such equities, liens,
or incumbrances as would have affected it had no adjudication
in bankruptcy been made. . . . The latter [the assignee] rep-
resenting general creditors, cannot dispute such claim, since,
had there been no adjudication, it could not have been disputed
by the mortgagors.   The assignee can assert in behalf of the
general creditors no claims to the proceeds of the sale of
that property which the bankrupts themselves could not have
asserted in a contest exclusively between them and their
mortgagee."

It follows that, Bayer becoming a bankrupt while in posses-
sion of the skins purchased, and in the tannery, under the
contract of May 29, 1874, if his assignee in bankruptcy had
taken possession of them, he would have done so, subject to the
terms of that contract; and Hauselt would have had the right
to require, either that he should perform the contract to its
termination, so far as the skins then on hand were concerned,
by finishing them, and forwarding them for sale; or that he
should surrender possession to Hauselt, under some arrange-
ment, mutually beneficial, whereby the enterprise might be
wound up, under his management, such as that actually made
by Bayer, on Nov. 6, 1874; or if the assignee sold the property
in the condition in which he received it, that he should account
to Hauselt specifically for the proceeds of the sale, and recog-
nize him as a creditor for the remainder of his advances, not
thereby refunded.

Such being the mutual rights of the parties, the transaction
of Nov. 6, 1874, though made with knowledge of Bayer's in-
solvency, and in contemplation of his bankruptcy, if made in
good faith, as it is admitted to have been, for the purpose of
securing to Hauselt the benefits of the contract of May 29,
1874, was legitimate, and did not constitute, as was held by
the Circuit Court, an unlawful preference in fraud of the bank-
rupt law.   It is quite true that Hauselt could not have com-
pelled Bayer, by an action at law, to deliver to him possession
of his tannery and its contents; nor could he have recovered
possession of the skins, tanned or untanned, by force of a legal
title; but it is equally true that, in equity, he could, by injunc-

tion, have prevented Bayer from making any disposition of the property, inconsistent with his obligations under the contract; and upon proof of his inability or unwillingness to complete the performance of his agreement the court would not have hesitated, in the exercise of a familiar jurisdiction, to protect the interests of Hauselt, by placing the property in the custody of a receiver for preservation, with authority, if such a course seemed expedient, in its discretion, to finish the unfinished work, and ultimately, by a sale and distribution of its proceeds, to adjust the rights of the parties.

For these reasons, we think the court below erred in its charges to the jury. The judgment will, therefore, be reversed, with instructions to grant a new trial; and it is

*So ordered.*