RIDDLE v. HUDGINS et al.

(Circuit Court of Appeals, Eighth Circuit.   October 16, 1893.)

No. 263.

1. UNITED STATES COURT IN INDIAN TERRITORY—ENFORCEMENT OF EQUITABLE LIEN.
    Equitable liens on personalty by contract of the parties being enforceable only in equity, jurisdiction of a case arising in the Choctaw Nation, upon suit by nonresidents to enforce such a lien against an administrator, is in the United States court for the Indian Territory, and not in the probate court of the Choctaw Nation.

2. EQUITABLE LIENS—FORECLOSURE—SEIZURE AT COMMENCEMENT OF SUIT.
    Foreclosure of an equitable mortgage upon personalty can be effected only by seizure and sale, and such seizure may be made at the commencement of the suit if the debtor is insolvent, or if for any reason the equity of the creditor can be preserved only by bringing the property under control of the court.

3. APPEAL—EFFECT OF ERRONEOUS ALLOWANCE.
    A trial court does not lose jurisdiction of a cause by erroneously allowing an appeal therein from an interlocutory order which is not appealable.

4. APPEAL — APPEALABLE ORDERS — DISCHARGE OF ORDER FOR SEIZURE OF PROPERTY.
    In a suit in a federal court to enforce an equitable mortgage upon personalty, an order discharging a previous order to the marshal to seize and hold the property is not a final decree, and is not appealable.

5. PAROL EVIDENCE — RECITAL IN BILL OF SALE OF RECEIPT OF PURCHASE MONEY.
    In a suit to enforce an equitable mortgage of personalty parol evidence is admissible to vary or contradict the bill of sale of the property in so far as it is a receipt for the purchase money, just as if the receipt were separate from the bill of sale.

6. EQUITABLE LIENS—ENFORCEABLE IN FOREIGN JURISDICTIONS.
    An equitable lien upon personalty created by a contract for sale thereof in Arkansas is enforceable in the Indian Territory after the purchaser has removed thither with the property.

Appeal from the United States Court in the Indian Territory.

In Equity.   Bill by Joseph G. Hudgins and Holder Hudgins, trading under the firm name of Hudgins & Bro., to enforce against Dauf Riddle, administrator of the estate of Blackstone Nichols, deceased, an equitable mortgage upon certain personal property. Decree was rendered for complainants.   Defendant appeals.   Affirmed.

## Statement by CALDWELL, Circuit Judge:

This suit grows out of the following state of facts: Joseph G. Hudgins and Holder Hudgins, white men, and partners in trade under the firm name of Hudgins & Bro., residing and doing business at Dallas, in Polk county, Ark., there sold and delivered to Blackstone Nichols, a Choctaw Indian, between the years 1882 and 1886, 950 head of cattle, and some other property which need not be specifically mentioned. The cattle were sold and delivered in lots at different times, and as each lot was sold and delivered Hudgins & Bro. executed to the purchaser a written bill of sale for the same, in which the receipt of the purchase money was acknowledged. The cattle, however, were not in fact paid for, but were purchased on a credit upon an express verbal agreement between Hudgins & Bro. and Nichols that they should have a lien on the cattle and their increase to secure the payment of the purchase money as well as some other indebtedness due to them from Nichols. The purchaser, Nichols, removed the cattle from Arkansas to the Choctaw Nation in the Indian Territory, where he died on the 20th of January, 1889, owing Hudgins & Bro. $9,017.51, all of which indebtedness, under the contract and agreement between the parties, was a lien on the cattle, and their increase, so sold to Nichols. At the time of Nichols' death he still owned and had in his possession more than 500 head of the cattle purchased from Hudgins & Bro. After Nichols' death, Dauf Riddle was appointed administrator of his estate by the probate court of the Choctaw Nation, and qualified as such, and thereupon, as such administrator, took possession of all the intestate's property, and refused to pay the debt due to Hudgins & Bro., or to deliver to them the property upon which they had a lien, and refused to recognize the validity of the lien. Hudgins & Bro. thereupon filed this bill in the United States court in the Indian Territory against Riddle, as administrator of Nichols' estate, setting out in substance the foregoing facts, and others wholly irrelevant to the merits of the case, and therefore not material to be stated, and praying that an attachment issue to seize and hold the cattle and other property, and that the court would decree that they have a lien thereon for $9,017.51, the sum due them from Nichols, and that the property be sold to satisfy the same. The answer denied any knowledge of the indebtedness of the intestate to the plaintiff, or of the agreement for a lien on the cattle and other property to secure such indebtedness; alleged that the defendant had been duly appointed administrator of the estate of Nichols by the proper probate court of the Choctaw Nation, and had duly qualified as such, and had as such administrator taken the property mentioned in the bill into his possession, and claimed the right to administer the same according to the laws of the Choctaw Nation, and denied that he had done or contemplated doing any act that would authorize an attachment of the property. Subsequently the defendant filed a motion to quash the attachment upon various grounds, which motion was sustained, from which ruling the plaintiffs prayed an appeal to the supreme court of the United States, which was allowed. A portion of the property had been sold by order of the court, made in pursuance to a stipulation of the parties, and the proceeds of the sale, amounting to $1,171.77, was by order of the court paid to one of the defendant's attorneys. The remainder of the property was turned over to the defendant, who was enjoined from disposing of the same until the further order of the court in the premises. The case was referred to a master, who, after taking testimony, made a report. The master found there was due from the estate of Nichols to the plaintiffs the sum of $9,017.51, and that to secure the payment of this sum a lien was created by express agreement between the plaintiffs and Nichols upon the property mentioned in the bill, which the plaintiffs were entitled to have foreclosed in this suit. The master reported on several other matters injected into the case by averments in the bill and answer; but, as those matters have no relation whatever to the merits of the case, they need not be noticed. Exceptions were taken by the defendant to the master's report, which were overruled, and the report confirmed, and a final decree rendered in favor of the plaintiffs for the amount of their debt, to secure the payment of which it was

found, and decreed that the plaintiffs had a lien on the property, which was ordered to be sold to satisfy the debt. From this decree the defendant appealed to this court.

W. H. H. Clayton, James Brizzolara, and James B. Forrester, for appellant.

William M. Cravens, for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

CALDWELL, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Upon the evidence in the case it is indisputable that the intestate, Nichols, at the time of his death owed the plaintiffs the amount stated in the master's report, and that by an express agreement between the plaintiffs and Nichols they had a lien on the cattle and other property mentioned in the bill to secure the payment of that indebtedness. The lien, which was created by agreement of the parties in this case, is called an "equitable lien" or an "equitable mortgage." It is said equitable liens by contract of the parties are as various as are the contracts which parties may make. 1 Jones, Liens, § 27. Such liens do not depend upon the possession of the property by the creditor, as do liens at law. Nor do they depend upon any statute for their force and efficacy, and they are not affected by the registration laws. They are founded upon the contract of the parties, which may be either verbal or in writing, and they will be enforced in equity against the party himself and his personal representatives, heirs, voluntary assignees, and purchasers with notice. Id. §§ 28, 30, 93; Fletcher v. Morey, 2 Story, 555, 565; 3 Pom. Eq. Jur. § 1235; Gregory v. Morris, 96 U. S. 619; Hauselt v. Harrison, 105 U. S. 401; Pinch v. Anthony, 8 Allen, 536; Tied. Eq. Jur. §§ 384, 385. The law gives no remedy by which such liens can be established and enforced. Being an equitable lien, the enforcement of it is exclusively within the province of a court of equity. "Equity," says the supreme judicial court of Massachusetts, "furnishes the only means by which the property on which the charge is fastened can be reached and applied to the stipulated purpose." Pinch v. Anthony, supra; Hovey v. Elliott, 118 N. Y. 124, 136, 137, 23 N. E. Rep. 475. The lien asserted by the plaintiff was a matter of purely equitable cognizance, and was not, therefore, within the jurisdiction of the probate court of the Choctaw Nation, which is not invested with the jurisdiction or powers of a court of equity. The plaintiffs brought their suit in the proper forum; indeed, in the only forum which could rightfully assert jurisdiction over the parties and the subject-matter. The lien which the plaintiffs were seeking to enforce being an equitable one, it could only be enforced in a court of equity; and in giving effect to and in enforcing such a lien a court of equity proceeds independently of the attachment laws of the state or territory applicable to common-law actions for the recovery of a debt. When appealed to for that purpose, a court

of equity will protect and enforce the rights of such a lien holder by recognized chancery methods. Most commonly these consist of the writ of injunction and the appointment of a receiver, though other methods may be pursued where the exigencies of the case demand them. The foreclosure of such a lien on personal property can only be effected by its seizure and sale; and the seizure may be made at the commencement of the suit whenever it appears the debtor is insolvent, or that for any reason the equity of the creditor to have the property applied to the payment of his debt can only be preserved by bringing the property under the control of the court. The death of the debtor does not vary the rights of the creditor in this respect. If the debtor's estate is insolvent, or if for any reason it is made to appear that the equitable lien of the creditor is in danger of being lost, and that there is no other means of making his debt but by the enforcement of such a lien, a court of equity will make some appropriate order for impounding the property until the hearing.

In the case at bar, upon the allegations of the plaintiffs' bill, it would have been proper for the court to place the property in the possession of a receiver, and enjoin the defendant from interfering therewith until the hearing. In substance this is what was done. The marshal was directed to seize and hold the property. For some reason, not very apparent, this order, called in the record an attachment, was set aside, and the property restored to the custody of the defendant. From this last order the plaintiffs prayed an appeal to the supreme court of the United States, which was allowed, and one of the contentions of the appellant is that the lower court thereby lost jurisdiction of the case. The order discharging the so-called "attachment" was not a final judgment, and was not appealable, (Robinson v. Belt, 56 Fed. Rep. 328,) and the jurisdiction of the court over the cause was not affected by anything done in relation thereto.

A further contention of the appellant is that, as the plaintiff executed to Nichols written bills of sale for the cattle, in which they acknowledge the receipt of the purchase money, they cannot show by parol testimony that the price was not paid, and that there was an agreement that they should have a lien upon the cattle until it was paid. The objection is not tenable. Parol testimony is not admissible to contradict or vary the bill of sale so far as it contains a contract; but so far as it is a receipt for the purchase money of the property it may be explained, varied, or contradicted to the same extent that it could be if it was simply a receipt for the purchase money separate from the contract of sale. It is common learning that, so far as a receipt goes only to the acknowledgment of payment, it is merely prima facie evidence of the fact of payment, and may be explained, varied, or contradicted by parol testimony. 7 Waite, Act. & Def. 448, where the authorities are collected. An agreement for a lien on the property sold to secure the payment of the purchase price is a contract about a matter not dealt with by the bill of sale, and not inconsistent with anything therein con-

tained. It is an independent contract, which it was perfectly competent for the parties to enter into upon sufficient consideration, before, at, or after the execution of the bill of sale. Browne, Par. Ev. pp. 138, 346–349. Steph. Ev. 107, 108; Allen v. Pink, 4 Mees. & W. 140. The evidence shows that the agreement for the lien constituted a part of the consideration for the sale.

It is objected that, the sale of the cattle having taken place and the contract for the lien having been made in Arkansas, the lien cannot be enforced in the Indian Territory. This contention is founded on the erroneous assumption that the lien sought to be enforced is the creation of an Arkansas statute. The Arkansas statue had nothing to do with the creation of the lien. It was an equitable lien, created by contract, and binding upon the parties in equity, and can be enforced in all jurisdictions where the equity jurisprudence of this country prevails. The sellers did not lose their equitable lien on the cattle by their removal into the Indian Territory, any more than the purchaser lost his title by that act. The legal rights and equities of the parties remained the same in the Indian Territory that they were in Arkansas.

We have looked through the record carefully, and find no error of which the appellant can complain. We think it proper to say that the only errors disclosed by the record are those of which the plaintiffs alone could complain. We feel constrained to say that the order allowing the defendant $800 for attorneys' fees to be paid out of the proceeds of the sale of the mortgaged property does not meet with our approval. The fact that the defendant was an administrator, and that the estate of which he was administrator was insolvent, or without means, did not entitle him to a large percentage of the proceeds of the sale of the mortgaged property to pay his attorneys for resisting the foreclosure. The administrator represented his intestate, and was no more entitled to demand that a part of the proceeds of the mortgaged property, already insufficient to pay the mortgage debt, be diverted to pay his attorneys for defending the foreclosure suit, than the intestate, if living, would have been. We know of no case where a court can take the money of a plaintiff which happens to come into its possession, and use it to pay his adversary's attorneys. The cases are very rare where the court is justified in directing the payment of attorneys' fees out of a fund in court, and, without stopping to enumerate them, it is sufficient to say this was not one of them. Trustees v. Greenough, 105 U. S. 527; Hauenstein v. Lynham, 100 U. S. 483, 491. In the case last cited the supreme court say: "It is a settled rule in this court never to allow counsel on either side to be paid out of the fund in dispute." But the appellant is not complaining of this order, or the order quashing the attachment, and, as the plaintiffs did not appeal, this court is powerless to deal with them.

The decree of the court below is affirmed.