## In re OLZENDAM CO.

(Circuit Court, D. New Hampshire. July 8, 1902.)

### No. 324.

1. LIENS—ENFORCEMENT IN EQUITY—TITLE OF RECEIVERS.

Petitioners entered into an agreement with a manufacturing company in New Hampshire, by which they agreed to make advances to the company, in consideration of which they were to have the sale of all its product at an agreed commission, and also to have a lien for their advances on all goods of which invoices were sent them, whether actually shipped or remaining in the hands of the company. Invoices

of certain goods were sent petitioners, showing their shipment for sale on account as per contract. The goods were not in fact shipped, but were packed in cases, and set apart in the company's warehouse, to be forwarded on petitioners' order. While so remaining, receivers were appointed for the company, which was insolvent. Petitioners had previously made advances beyond the value of the goods in their possession, after the company became insolvent, but without knowledge or reason to know such fact. *Held* that, there being no rule of law in New Hampshire making possession of the goods retained by the company a conclusive badge of fraud, petitioners had an equitable lien thereon for their advances, which they were entitled to enforce against the company or its receivers.

2. SAME—CONSTRUCTION OF CONTRACT.

A manufacturing company contracted to make and furnish to a contractor certain goods which he had contracted to supply to the government. Petitioners made advances to the company under an agreement that it should make the bills for the goods furnished under the contract payable to petitioners, who were to receive all the proceeds, to be applied in payment of such advances. The company was insolvent at the time, but petitioners believed, and had reason to believe, that it was solvent. After a portion of the goods had been furnished under the contract, and petitioners had received the proceeds thereof, receivers were appointed for the company, who came into possession of certain cases of goods which had been marked with the contractor's name, but had not been shipped. The receivers made certain other goods, which they furnished under the contract, pursuant to an agreement with the purchaser that payment therefor should be made to them. *Held*, that the agreement between the company and petitioners gave the latter no lien on the goods themselves, and that they could not recover the undelivered goods which came into the receivers' hands, nor the proceeds of those voluntarily made by the receivers.

In Equity. On petition against receivers.

Taggart, Tuttle & Burroughs, for petitioners.

Chas. B. Barnes, Jr., for complainant and receivers.

Whipple, Sears & Ogden, for defendant and receivers.

LOWELL, District Judge. Vietor and Achelis, the petitioners, were commission merchants in New York City. The Olzendam Company was a manufacturer of hosiery in Manchester, N. H. For some years the petitioners had sold the goods of the company, and had advanced money to it, so that on January 1, 1900, the company was indebted to them. They then agreed to continue to make advances, and in consideration of this and of a reduction of the rate of their selling commission the company agreed that they should sell all its goods. It was also agreed that all goods for which invoices had been or should be sent to the petitioners, whether the goods were delivered to the petitioners in New York or remained in the possession of the company in Manchester, should be security for the general balance due the petitioners, and for all future advances; also that, immediately upon receipt of orders from the petitioners, the company would forward all the goods above referred to which were held in their warehouses. The cases of hosiery here in question were manufactured upon orders submitted by the petitioners after January 1, 1900. The cases were marked by the company with a special number, and with the name of the purchaser of the goods, and an invoice thereof was sent to the petitioners. It was in substantially the following form: Invoice

of ———— cases of goods forwarded by Fall River Line to New York by the company, and consigned to the petitioners to be sold on their account as per agreement. (Then followed a schedule of the number, the quality, and the contents of each several case.) Case No. ———— is for order A. B. Case No. ———— for order C. D. Cases Nos. ———— "are for stock." These cases, though described in the invoice as forwarded to the petitioners, were set aside by the company in its warehouse, and were held awaiting shipping orders from the petitioners. They have never been in the actual possession of the latter, and were insured by and in the name of the company. On March 19, 1902, receivers of the company were appointed by this court, and on that date they took possession of all the property belonging to the company, including the goods above described. Shortly thereafter, demand was made by the petitioners upon the receivers to ship said goods. On March 19, 1902, the company was indebted to the petitioners in the sum of $95,720, of which amount $15,000 was a specific loan for advances other than those hereinbefore described. The petitioners had in New York, in their actual possession, goods shipped by the company of the approximate value of $47,020, and the value of the goods here in question was about $10,541. On March 19, 1902, the company was insolvent, and its assets, including the goods in question, were not sufficient to pay its creditors in full, but on that date, and at all times prior thereto, the petitioners had reasonable cause to believe, and did believe, that the company was amply solvent. This petition is brought against the receivers to compel them to deliver the goods here in question to the petitioners, as security for the debt of the company to the latter.

That the petitioners had not the ordinary lien of factors is plain, inasmuch as they had no possession of the goods. Jones, Pledges, § 462. They claim a lien enforceable, in their favor, by a court of equity, against the company, and against its receivers. After the agreement of January 1, 1900, they might have gone into equity to restrain the company from disposing of these goods. Sullivan v. Tuck, 1 Md. Ch. 59; Jones, Liens, § 29. To that extent, they had a lien enforceable in equity. On the other hand, a bona fide purchaser for value would undoubtedly have taken the goods free of the lien. So would an attaching creditor in Massachusetts or New Hampshire, where the rights of an attaching creditor are likened to those of a bona fide purchaser for value. See Lanfear v. Sumner, 17 Mass. 110, 9 Am. Dec. 119; Hodgdon v. Libby, 69 N. H. 136, 43 Atl. 312. Again, a trustee under the bankrupt act of 1898 would hold these goods against the lien claimed by the petitioners for, by section 70 of the act, he has the rights of an attaching creditor. On the other hand, a voluntary assignee, and a purchaser with notice, would take subject to the equitable lien of the petitioners. Walker v. Brown, 165 U. S. 654, 664, 17 Sup. Ct. 453, 41 L. Ed. 865. How stands the receiver? In Refining Co. v. Payne, 167 U. S. 127, 147, 17 Sup. Ct. 754, 42 L. Ed. 105, an equitable lien upon sugar bounty to become due was held good against a receiver representing the general creditors. In Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075, an assignee in bankruptcy under the act of 1867 was held to take goods of the bankrupt subject

to an equitable lien like this. It is true that there the lienee advanced the money with which the goods in question were purchased by the lienor, but the validity of the equitable lien was there rested, in whole or in part, upon an agreement to give a lien which had been entered into by the owner of the goods. See the citation from Story, Equity Jurisprudence, at 105 U. S. 406, 26 L. Ed. 1076; Perry v. Board, 102 N. Y. 99, 105, 6 N. E. 116. To the same effect is the opinion in Riddle v. Hudgins, 7 C. C. A. 335, 58 Fed. 490. There, also, the lien was claimed by the vendor of the property, but the court did not rely upon this fact, and said that the lien was enforceable in case of the insolvency of the debtor. See, also, Winsor v. McLellan, 2 Story, 492, Fed. Cas. No. 17,887; Alexander v. Ghiselin, 5 Gill, 138; Gregory v. Morris, 96 U. S. 619, 24 L. Ed. 740. In Smith v. Robinson, 13 Metc. 165, no lien but a factor's lien was contemplated by the parties, and, for want of possession, it was held that no factor's lien existed. The Massachusetts cases cited by counsel for the receivers show that the goods in question would pass to an assignee in insolvency.. Moors v. Reading, 167 Mass. 322, 45 N. E. 760, 57 Am. St. Rep. 460. As was observed in Blanchard v. Cooke, 144 Mass. 207, 225, 11 N. E. 83, "The assignee in bankruptcy under the act of 1867 acquired only the rights of the debtor, while an assignee in insolvency acquired something more." See Haskell v. Merrill, 179 Mass. 120, 60 N. E. 485. Even if it be true that the rule of law in Massachusetts, viz., that title does not pass without delivery of possession, so manifests the public policy of Massachusetts regarding liens of the sort here claimed that a federal court in Massachusetts must hold them void, yet no such rule exists in New Hampshire. See Adams v. Lee, 64 N. H. 421, 13 Atl. 786; Thompson v. Esty, 69 N. H. 55, 45 Atl. 566. In the latter case, the retention of possession was held not to be a conclusive badge of fraud, and the claim of the assignee in insolvency was rejected. As to these goods, the prayer of the petitioners must be granted.

The Government Contract. About December 10, 1901, a contract was entered into between the petitioners and the company, by which it was agreed that the petitioners should be allowed a commission of 2 per cent. on all contracts thereafter taken by the company from the United States government. About January 28, 1902, a government contract was entered into between the company and one Taggart of Philadelphia, whereby the company agreed to manufacture and deliver to Taggart 25,000 pairs of socks of a certain sort; Taggart having contracted with the government for their delivery by him to it. On January 29, 1902, the petitioners advanced to the company $15,000, and opened a new account on that day, called "A. P. Olzendam U. S. Government Account." On the same day, and before the advance was made, the petitioners and the company agreed that the company should fully carry out and perform the contract with Taggart, and that the proceeds from this contract should be paid to the petitioners, to secure their advances, until they should have been fully reimbursed therefor, together with interest and commissions; that in billing the goods the original bills should be made on the company's billheads, and sent to Taggart; that each bill should be stamped. "Payable to

Vietor & Achelis," and that duplicate bills should be sent to the petitioners. The petitioners were induced to make this advance by reason of the contract between the company and Taggart. The total avails of said contract would be between $6,000 and $9,000. Several cases of socks were sent to Taggart in accordance with this agreement, and the petitioners have received payment for them. Before the appointment of the receivers, the company had manufactured four other cases of these socks. These four cases were set aside, and marked with Taggart's name and address; they came into the possession of the receivers on March 19, 1902, and still are in their possession, and have not been billed or invoiced. Thereafter the receivers manufactured seven other cases from materials purchased by them, and shipped five cases to Taggart upon his express agreement to accept them on behalf of the receivers, and to make payment for them to the receivers. No payment has yet been made. The receivers have in their possession the two remaining cases. Of the 25,000 pairs called for by the contract, 1,440 have not been manufactured, and the receivers have now ceased to carry on business of the company, and have no material on hand with which to complete the contract. The receivers have refused to carry out the terms of the contract between the petitioners and the company, asserting that they are entitled to all payments from Taggart on account of the five cases delivered to him. On January 29, 1902, the date of the advance of $15,000 by the petitioners, the company was insolvent, and continued so until the appointment of the receivers. The assets in the hands of the receivers are not sufficient to pay all the creditors, but the plaintiffs had reasonable cause to believe, and did believe, that the company was amply solvent on said date. This petition is brought to obtain the proceeds of the 11 cases mentioned. By its agreement with the petitioners, the Olzendam Company pledged to them the proceeds of the contract, but not the goods themselves with which the contract was concerned; therefore, no lien arose upon the goods themselves. It seems that the petitioners could not have maintained a bill in equity against the company to compel it to deliver to Taggart even those cases of goods which had been marked with his name. The receivers were not obliged to carry out the contract with Taggart; they could have sold these goods to a third party, and could have collected the price. The property coming into the receivers' hands which was not subject to the petitioners' lien was to be disposed of for the benefit of the general creditors, and the receivers could not apply this property for the sole benefit of the petitioners. They could say to Taggart, "We have succeeded to the company's rights and property; we will furnish you the goods as provided in the company's contract; but, as we are not bound to do this, we will do it only on the condition that you enter into a new contract with us to pay us the price of the goods we send you." In effect, this agreement was made between the receivers and Taggart. If these considerations dispose of the petitioners' claim to the four cases, their claim to the five cases and to the two cases is invalid a fortiori.

As to these goods, the petition is dismissed. Costs will be allowed neither party.