## In re FABIAN.

### (District Court, E. D. Pennsylvania. March 9, 1907.)

### No. 2,328.

SALES—RIGHTS OF PURCHASER'S TRUSTEE IN BANKRUPTCY—SALE OR BAILMENT —VALIDITY.

Petitioners contracted with F. prior to his bankruptcy to ship certain goods to him to be sold for their account, and to remain petitioners' property until sold. F. agreed to sell the goods at retail only, and to remit to petitioners each week the cost price of their goods sold during the previous week, and once each season to account and adjust the difference between sales and remittances. The contract also provided that if F. violated the contract, petitioners might take their goods back and hold F. for any loss they sustained, and that the stock should be fully insured against fire through petitioners, the cost to be paid by F. *Held*, that such contract constituted a valid bailment and not a sale as between petitioners and F., though not recorded; and F. having failed to make the payments agreed on, petitioners were entitled to the goods or their proceeds as against F.'s trustee in bankruptcy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 7–11.]

In Bankruptcy.

Joshua C. Taylor, for trustee.
Greenwald & Mayer, for claimant.

J. B. McPHERSON, District Judge. Certain goods were shipped to the bankrupt by Schleestein, Cohn & Co., of ·New York, under the following contract:

"This contract entered into this 21st day of March, 1905, between Schleestein, Cohn & Co., of New York City, and Louis Fabian, Chester, Pa., witnesseth:

"That Schleestein, Cohn & Co. agree to ship to Mr. Louis Fabian, from time to time, certain goods to be sold for their account, as per schedules to be delivered at time of shipments and all such goods to remain the property of Schleestein, Cohn & Co. until sold for their account. Said L. Fabian agrees to sell these goods at retail only and remit to Schleestein, Cohn & Co., each week, the cost price of their goods sold during previous week, which Mr. L. Fabian guarantees to average, weekly, no less than forty dollars ($40) on each $1,000 stock shipped. Then once each season a regular accounting is to be had and adjustment made between sales made and remittances sent.

"Schleestein, Cohn & Co. agree to increase or replenish this stock from time to time, as in their judgment is required.

"If Mr. Fabian violates this contract, Schleestein, Cohn & Co. shall be privileged to take their goods back and hold said Louis Fabian responsible for any loss they may suffer thereby.

"Mr. Louis Fabian agrees to invest at once and keep invested in his business for his own benefit, no less than $3,000 his own capital.

"This stock will be fully insured against fire, through Schleestein, Cohn & Co., the cost of insurance to be paid by Mr. Fabian to Schleestein, Cohn & Co."

The bankrupt filed a voluntary petition in August, 1905, and at the date of adjudication some of the goods were still in his possession. They were claimed by Schleestein, Cohn & Co., as their property, but were afterwards sold under an agreement with the trustee that the proceeds of sale should be awarded to the person who should ultimately be found to be entitled to the goods under the foregoing con-

tract. The referee was of opinion that the contract was an agreement of conditional sale, a mere device to retain color of title after a true sale had actually taken place, and decided against the claimants.

The question thus raised has been variously decided in different jurisdictions, and has sometimes been decided differently by the same tribunal. As it seems to me, however, the Supreme Court of the United States has recently laid down a rule which renders it unnecessary to discuss the other cases that have been cited in the briefs of counsel. I refer to the decision in York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782 (S. C. 15 Am. Bankr. R. 633), in which the court held, as stated in the syllabus:

"The trustee in bankruptcy is vested with no better right or title to the property than the bankrupt had when the trustee's title accrued; and where, as in the state of Ohio, a conditional sale contract is good as. between the parties themselves, although not filed, the vendor of machinery sold and delivered under such a contract, and payment for which had not been made, may remove the same as against all creditors of the bankrupt who have not fastened upon it by some specific lien."

This quotation states accurately the position of the court, as will appear from the following paragraphs of the opinion:

"We come then to the question whether the adjudication in bankruptcy was equivalent to a judgment, attachment, or other specific lien upon the machinery. The Circuit Court of Appeals has held herein that the seizure by the court of bankruptcy operated as an attachment and an injunction for the benefit of all persons having interests in the bankrupt's estate.

"We are of opinion that it did not operate as a lien upon the machinery as against the York Manufacturing Company, the vendor thereof. Under the provisions of the bankrupt act the trustee in bankruptcy is vested with no better right or title to the bankrupt's property than belonged to the bankrupt at the time when the trustee's title accrued. At that time the right, as between the bankrupt and the York Manufacturing Company, was in the latter company to take the machinery on account of default in the payment therefor. The trustee, under such circumstances, stands simply in the shoes of the bankrupt, and, as between them, he has no greater right than the bankrupt. This is held in Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. The same view was taken in Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577. It was there stated that 'under the present bankrupt act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt.' See Yeatman v. Savings Institution, 95 U. S. 764, 24 L. Ed. 589; Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816; Hauselt v. Harrison, 105 U. S. 401. The same doctrine was reaffirmed in Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956. The law of Ohio says the conditional sale contract was good between the parties, although not filed. In such a case the trustee in bankruptcy takes only the rights of the bankrupt, where there are no specific liens, as already stated."

After explaining the meaning of the remark in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, to the effect "that the filing of the petition in bankruptcy is a caveat to all the world and in effect an attachment and injunction," the court concludes as follows:

"In this case, under the authorities already cited, the York Manufacturing Company had the right, as between itself and the trustee in bankruptcy, to take the property under the unfiled contract with the bankrupt, and the adjudication in bankruptcy did not operate as a lien upon this machinery in favor of the trustee as against the York Manufacturing Company."

Since there is no doubt that the contract of March 21, 1905, now before the court, was valid between the parties, I am unable to distinguish the present dispute from the York Manufacturing Company's case, and am, therefore, constrained to differ from the conclusion of the learned referee. Undoubtedly the bankrupt violated the terms of his contract in failing to make the payments agreed upon, and apparently, therefore, the claimants, under the decision just referred to, had the right to reclaim the remainder of the goods.

The ruling of the referee is reversed, and it is now ordered that the trustee pay over to Schleestein, Cohn & Co., within 10 days from this date, the sum of $1,531.85, the proceeds derived from the sale of the goods in controversy.