## In re PLANTATIONS CO.

(District Court, E. D. Pennsylvania. January 25, 1921.)

No. 5623.

1. **Subrogation �köö25—One whose tobacco was sold by mutual agent to pay debt held subrogated to pledgee's rights.**

   Where the agent of two companies, one of which, the P. Company, owed a debt secured by a pledge of tobacco, sold a quantity of tobacco belonging to the other company, the C. Company, and paid such debt from the proceeds, the C. Company was subrogated to the rights of the pledgee under the laws of Porto Rico.

2. **Subrogation ⊫35—Equitable lien of subrogated party not affected by attachment proceedings which were dissolved.**

   The equitable lien of a party subrogated to the rights of a pledgee was not affected by attachment proceedings which were dissolved without any sale.

3. **Subrogation ⊫35—Equitable lien of subrogated party not affected by removal of property or proceeds.**

   The equitable lien of one subrogated to the rights of a pledgee of tobacco in Porto Rico was not divested by the removal of the tobacco or its proceeds from Porto Rico by the pledgor's trustee in bankruptcy.

4. **Bankruptcy ⊫188(3)—Trustee takes subject to equitable liens.**

   A trustee in bankruptcy took property subject to liens equitably chargeable against it, and, as respected their enforcement, stood in the shoes of the bankrupt.

5. **Bankruptcy ⊫267—Equitable lien on property in trustee's possession held transferred to proceeds.**

   An equitable lien on tobacco coming into the possession of a trustee in bankruptcy was transferred to the proceeds on a sale of the tobacco by the trustee.

6. **Bankruptcy ⊫188(3)—Trustee knowing facts creating equitable lien held chargeable with knowledge of lien.**

   A trustee in bankruptcy, knowing of the facts upon which an equitable lien was based, was chargeable with knowledge of the lien.

---

⊫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

270 F.—18

**7. Bankruptcy ⊕══345—When property subject to lien, used in paying expenses, proceeds will be followed into general assets.**

Where a trustee in bankruptcy, knowing the facts creating an equitable lien on property, sold the property and used the proceeds in paying costs of administration primarily chargeable against the general assets, a court of equity, following the maxim that equity will look upon that as done which ought to have been done, will follow the proceeds into the entire mass of the estate, giving the party injured by the unlawful diversion a priority of right over the other creditors.

In Bankruptcy. In the matter of the Plantations Company, bankrupt. On review of an order of the referee. Petition dismissed, and order affirmed.

Karl G. Kirsch, of Philadelphia, Pa., for claimant.
Carr & Steinmetz, of Philadelphia, Pa., for trustee.

THOMPSON, District Judge. The bankrupt conducted a tobacco plantation in Porto Rico, where it had in a warehouse a quantity of tobacco owned by it. In another part of the same warehouse was a quantity of tobacco owned by the Centrosa Company. The warehouse was in charge of one Lopez, who was agent for both companies. The Plantations Company obtained a loan of $5,000 from one Luina, and as security therefor gave Luina a "tobacco note," pledging a quantity of its tobacco as security for the debt. The note having fallen due about May 31, 1915, Luina requested payment. The Plantations Company's tobacco not being in condition to sell, Lopez sold a quantity of the Centrosa Company's tobacco, and out of the proceeds paid Luina. While the action of Lopez was unknown to the Centrosa Company at the time, it, upon being apprised of the facts, raised no objection.

The Plantations Company was adjudicated a bankrupt by this court on November 8, 1915.

Within four months of bankruptcy, the Plantations Company's tobacco was attached and seized by the United States marshal in Porto Rico.

Luina sought to intervene in the attachment proceedings, but, his counsel being advised by the trustee, who had been elected on January 17, 1916, and who had proceeded to Porto Rico to look after the interests of the bankrupt estate, that he could present any claim in this court, and that removal of the tobacco would be without prejudice, the intervention was not pressed.

Upon the application of the trustee, the attachment was dissolved.

The trustee thereupon took possession of the tobacco, and without notice to creditors or with leave of court sold a large part of it at private sale for $3,938.79. The sale was subsequently confirmed, and orders entered for sale of the balance, which was sold for $2,946.78. The total proceeds were $6,885.57. The Centrosa Company had no notice at the time of the confirmation of the first sale nor of the orders for subsequent sales, and on March 2, 1917, filed exceptions to the sales and confirmation thereof.

Out of the funds realized there were, upon the order of the referee

⊕══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and without notice to the Centrosa Company of such intention, paid out at various times for expenses of administration and costs such amounts that on March 1, 1917, there remained in the trustee's hands, but $1,869.44 of the proceeds of the pledged tobacco. The funds of the estate were, however, increased from other sources to more than $5,000.

On April 3, 1917, the Centrosa Company presented a petition setting out that under the law in force in Porto Rico, through the payment of the debt of the bankrupt to Luina, thus releasing the tobacco from the lien of the note, it had become subrogated to Luina's rights in the tobacco or the proceeds of its sale, and praying for an order on the trustee to pay the Centrosa Company $5,000 in satisfaction of its lien acquired by subrogation.

The referee was of the opinion that under the laws of Porto Rico the lien of Luina was valid; that the Centrosa Company, through the application by Lopez of funds derived from the sale of its tobacco, became subrogated to Luina's rights; that the lien attached to the moneys in the hands of the trustee; and that the equitable lien was not divested by the payment out of the proceeds of the sales of administration expenses, but that general funds which would have been diminished if the administration expenses had been paid out of them should be appropriated to the payment of the amount of the lien. Accordingly an order was entered for the payment of the claim, and the case is here for the review of that order.

[1] Without discussion of the laws in force in Porto Rico, which are fully cited in the referee's opinion, they convincingly sustain the referee's conclusion that the Centrosa Company became subrogated to the rights of Luina.

[2] The equitable lien thus transferred to the Centrosa Company was not affected by the attachment proceedings in Porto Rico. There was no sale which would discharge the lien, and after the dissolution of the attachment the tobacco came into the hands of the trustee in the same condition as to liens and equities as before the attachment.

[3] The lien was not divested by reason of the removal of the property or its proceeds out of Porto Rico. Riddle v. Hudgins, 58 Fed. 490, 7 C. C. A. 335.

[4] The equitable rights of the parties were not changed by the commencement of bankruptcy proceedings. The trustee took the tobacco subject to the liens equitably chargeable against it, and as respects their enforcement stands in the shoes of the bankrupt, and he took it subject to a trust for the benefit of the Centrosa Company. Gage Lumber Co. v. McEldowney, 207 Fed. 255, 124 C. C. A. 641; Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075.

[5] The lien upon the tobacco was transferred to the fund in the hands of the trustee. Goodnough Mercantile & Stock Co. v. Galloway (D. C.) 171 Fed. 940; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577.

[6, 7] The trustee knew of the facts upon which the Centrosa Company's equitable lien was based, and therefore is chargeable with knowl-

edge of the lien. The general assets of the estate against which the costs of administration are primarily chargeable cannot be relieved of those charges by the fact that the trustee, knowing the facts, used first the funds chargeable with the lien for their payment in ease of general creditors. Knowing the facts, he should not have used the funds chargeable with the lien in relief of liabilities chargeable against the general funds of the estate, and, following the maxim that equity will look upon that as done which ought to have been done, a court of equity will follow the proceeds into the mass of the estate.

Confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. Frelinghuysen v. Nugent (C. C.) 36 Fed. 229; Peters v. Bain, 133 U. S. 670, 10 Sup. Ct. 354, 33 L. Ed. 696; Alexander v. Fidelity Trust Co., 249 Fed. 1, 161 C. C. A. 61.

Seeing no error in the order of the referee, the petition for review is dismissed, and the order affirmed.