## In re MODELL.

### No. 22636.

District Court, E. D. New York.
Dec. 14, 1933.

Irving Levinson, of New York City, for trustee, for the motion.

A. Arthur Klar, of New York City, for claimant Samuel Klar, opposed.

BYERS, District Judge.

This is a trustee's petition to review a referee's order directing payment to the claimant of all the assets coming into the trustee's hands, under the following circumstances:

An involuntary petition was filed on June 25, 1932; twenty-three days before that the bankrupt had executed an assignment to his father-in-law, the said claimant, of a judgment recovered by the bankrupt on that day and any money "that may be had or obtained by means thereof or on any proceeding to be had thereon".

It is therein recited that on that day the bankrupt did recover a judgment in the Supreme Court, Kings County, against the Radio Corporation of America, for $10,174.57, which was duly filed, and that, in consideration of the sum of One Dollar and other good and valuable considerations, the bankrupt sold, assigned, etc., the said judgment; and constituted the assignee his attorney in fact to recover the money due on the said judgment, and to satisfy the same. Also that the said agreement was subject to the lien of the attorneys for the plaintiff for their services and disbursements incurred in connection with the said action.

The foregoing, having been executed within the period of four months prior to the filing of the petition, clearly constituted a preference, and, as such, would be set aside at the instance of the trustee for creditors; it is claimed, however, that the transaction evidenced by the assignment was merely the consummation of an antecedent transfer made by the bankrupt to his father-in-law on August 3, 1930. The latter is in writing and recites that—

"In consideration of the sum of One ($1.) Dollar and other good and lawful consideration, receipt whereof is hereby acknowledged, I (the bankrupt) do hereby transfer and assign to Samuel Klar, residing at 2407 Avenue J, Brooklyn, New York, all my right, title and interest in and to any verdict, decision, judgment, recovery or proceeds thereof, which I may recover or become entitled to arising from an action commenced by me in the Supreme Court of the State of New York, Kings County, entitled Julius Modell against Radio Corporation of America and John Harley.

"I hereby authorize the defendants in said action or my attorneys to pay to said Samuel Klar the share that may become payable to him from said verdict, decision, judgment or recovery and I hereby give to said Samuel Klar the full power and authority to ask, demand, collect or receive my share, and who in my name or in his name, to satisfy or discharge any judgment I may obtain in said action."

The claimant urges that the foregoing created an equitable lien upon the proceeds of the judgment (which was for a personal tort), which should be given effect even though other creditors of the bankrupt are thereby deprived of any share of his estate.

The conditions under which the last mentioned instrument was signed are deemed to have been established substantially as follows:

In September, 1930, the bankrupt was indebted to his father-in-law in the sum of about $35,000.00, which was reduced in that month to about $16,000.00 through sources not presently involved. The latter balance was owing on October 3, 1930, and at that time the bankrupt and his family were living in the home of his father-in-law.

The extent of the bankrupt's indebtedness to other creditors at that time was not less than $70,000.00.

There was no present consideration for the instrument of October 3, 1930, and the following statement in the referee's memorandum to the contrary must have been inadvertent:

"As security for loans previously made to the bankrupt and for future loans the bankrupt executed, on October 3rd, 1930, an assignment to his father in law, Samuel Klar, of any judgment which he might obtain against the Radio Corporation.

"The record shows that Samuel Klar thereafter advanced substantial sums for the living expenses of the bankrupt's family and also for the expense of the litigation. The total loans made by him to the bankrupt aggregate approximately $16,000."

There is no evidence that loans were made by the claimant to the bankrupt after October 3, 1930, or that he advanced any money in connection with the said litigation, or that he advanced sums for the living expenses of the bankrupt's family.

The trustee's brief states, in reference to the living expenses of the bankrupt in his father-in-law's home, that the claimant's wife was listed as a creditor of the bankrupt in the sum of $6600.00 in the schedules for board and lodging furnished the bankrupt and family from April 21, 1929, to June 25, 1932, and she filed a claim for that sum; this statement is not challenged in the reply brief of the claimant and indeed the latter's whole case is based upon the theory that the $16,000.00, in round figures, owing to him on October 3, 1930, being a past consideration, was sufficient to sustain the claim.

This difference between the referee's memorandum and facts as shown in the testimony is important in the light of what is said in the various cases referred to by the referee and relied upon by the claimant.

Whether the claimant had what is called an "equitable lien" has been properly described as a close and difficult question. Massachusetts Trust Co. v. MacPherson (C. C. A.) 1 F.(2d) 769, at page 774.

It clearly appears that in October, 1930, the claimant knew that the bankrupt was hopelessly insolvent, and that the effect of carrying out the arrangement embodied in the document in question would be to deprive other creditors of any participation in the assets. Equally it is clear that the claimant did not contribute anything to the success of the bankrupt's cause of action against the Radio Corporation of America (which had been pending for at least three years) by paying counsel fee or other expense of the litigation; he was not in a position to either add to or subtract from the outcome of that litigation except by helping to finance it, and he did not do that, because it was being conducted for a contingent fee.

The referee cites eight cases, and quotes from one of them; the entire passage is as follows (In re Interborough Consolidated Corporation (C. C. A.) 288 F. 334, at pages 349, 350, 32 A. L. R. 932):

"It has been held that even an agreement to pay a debt out of a designated fund does not in itself create a lien upon the fund. Thus it is laid down in 19 Am. & Eng. Encyc. of Law (2d Ed.) p. 16, as follows:

" 'But a mere agreement to pay a debt out of a designated fund does not give an equitable lien upon the fund, or operate as an equitable assignment thereof. There must be an appropriation of the fund pro tanto, either by giving an order, or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor.'

"Cases are cited in its support. And in Bispham's Equity (8th Ed.) it is said that the better opinion would seem to be that a mere *promise* to pay out of a fund does not operate as an assignment of the fund. But it is now definitely settled in the federal courts that a promise based on a consideration to pay out of a particular fund creates a lien on the fund, which attaches to the fund when it comes into existence and which equity will enforce, holding the promisor to be a trustee as soon as he gets title. Barnes v. Alexander, 232 U. S. 117, 120, 121, 34 S. Ct. 276, 58 L. Ed. 530.

"A contract whereby a contracting party sufficiently indicates an intention to make some particular property or fund which it describes a security for a debt or other obligations creates an equitable lien on the property so indicated. Ingersoll v. Coram, 211 U. S. 335, 368, 29 S. Ct. 92, 53 L. Ed. 208. A contract which shows an intention to charge a particular property therein identified with an obligation creates an equitable lien thereon. Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075; Gregory v. Morris, 96 U. S. 619, 24 L. Ed. 740. And if a party by agreement creates a charge or claim in the nature of a lien on property of which he is the owner or in possession, a court of equity will establish and enforce it, not only against the party who stipulated to give it, but also against third persons who are either volunteers, or take with notice. Walker v. Brown, 165 U. S. 654, 664, 17 S. Ct. 453, 41 L. Ed. 865."

The foregoing follows a quotation on page 349 of 288 F., to the effect that "the words equitable lien are intensely undefined".

The opinion was delivered in a case in which it was decided that a deposit carried by the bankrupt separately from its other funds in an account entitled "Interest on Interborough-Metropolitan Company 4½% Bonds" constituted a portion of the general assets of the bankrupt corporation and should not be held applicable to the payment of interest on the bonds described in the said deposit; it was held that no trust was created for the benefit of the bond holders and no equitable lien was established under the circumstances revealed. That opinion probably contains the most recent statement of controlling views held in this Circuit, with respect to so-called equitable liens and equitable assignments, and the cases cited, and many referred to in the various opinions, have been examined in connection with this decision.

Without attempting a formulation of principles derived from that process, it may be stated that the cases lend themselves to convenient grouping somewhat in this wise:

(A) Those in which lawyers having a contingent fee were held to possess an equitable lien upon the proceeds or results of litigation, as against a trustee in bankruptcy, or other person concerned. Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530; Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208; Voltz v. Treadway & Marlatt (C. C. A.) 59 F.(2d) 643.

In these cases the lawyers contributed by their services to the preservation, promotion, or final success of a cause of action or a legal right, and, while the recognition of the equitable lien is not stated to be founded in that reason, in so many words, the decisions liken the cases to others in which a contribution to or participation in the promotion of the assignor's interests or property are concerned.

(B) Cases in which money was advanced to a bankrupt by the claimant, in reliance upon certain security, which thereby became impressed with a special responsibility to respond, according to the intent of the parties, which it would be inequitable to avoid: Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075; Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865; Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577; Crosby v. Packer (C. C. A.) 22 F.(2d) 611; Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995.

Foster v. Manufacturers' Finance Co. (C. C. A.) 22 F.(2d) 609: Here such a lien was held not to attach to certain accounts receivable which had been substituted for others of a fictitious character.

In re Pfau Mfg. Co. (C. C. A.) 294 F. 158:

Here such a lien would not be recognized as attaching to merchandise in bulk, not earmarked as between the parties. Union Trust Co. v. Bulkeley (C. C. A.) 150 F. 510; Hurley v. Atchison, T. & S. F. R. Co., 213 U. S. 126, 29 S. Ct. 466, 53 L. Ed. 729; Mass. Trust Co. v. MacPherson (C. C. A.) 1 F. (2d) 769.

In some of these cases, the property was completely in existence when the lien arose, and in others it was subsequently received, perfected, or completed; but in all of them there was present the element of contribution by the claimant to performance by the assignor of some function, duty or activity which was important to him in the pursuit of his calling or affairs, or that of another.

It is thought that this claimant does not bring himself within either of these two groups of cases, because he did nothing to advance the bankrupt's cause of action against the Radio Corporation of America, by helping to finance it, or by contributing any effort whatever whereby it was brought to fruition. It was through no act of his that any property was acquired, maintained, finished or marketed; no business activity of the bankrupt was carried on, and no credit was extended to him, in reliance upon any act or forbearance on the part of the assignee. If this is true, he was not in the position of the holder of an equitable lien against the intangible possibility of favorable judgment in that case, on October 2, 1930, when the first document was executed. Whether he might have brought himself into such a holding by appropriate act, need not be considered, for none is asserted on his behalf.

It results therefore that the first property right which was his, so far as the lawsuit was concerned, came into existence when the assignment of June 2, 1932, was executed and delivered.

This view is consistent with the conduct of the parties, for, if the earlier document alone had been regarded as potent to accomplish its proclaimed purpose, the second would not have been deemed necessary.

The latter is drawn in the guise of a self-contained conveyance, and does not purport to be a confirmatory transfer of that which had been tentatively set over at an earlier time.

This does not mean that the rights of the parties would be determined by mere matters of form, but that resort to the documents themselves somewhat confirms that which is thought to be otherwise discernible, of the legal infirmity of the claimant's status.

The case of Glegg v. Bromley, 81 L. J. K. B. 1081, cited by the claimant, has not been overlooked. It is not deemed to be controlling as against the trustee, under the facts presented by this record.

The transaction here under examination was doubtless sufficient between the parties but, as no equitable lien was created within the authorities by the transaction of 1930, it is concluded that the rights of the claimant must stand or fall by the assignment of June 2, 1932, and that the latter is clearly preferential.

Of the cases cited by the trustee, the following have been found helpful: Security Warehousing Co. v. Hand (C. C. A.) 143 F. 32; In re Webb Co. (D. C.) 224 F. 258; Long v. Farmers' State Bank (C. C. A.) 147 F. 360, 9 L. R. A. (N. S.) 585.

The Court is indebted to both counsel for their industry in briefing this interesting question.

The order of the referee is reversed, and the petition of Samuel Klar for an order directing the trustee to pay to him the money in question is denied.

Settle order.